1  MICHAEL J. SACKSTEDER (CSB No. 191605)
   msacksteder@fenwick.com
2  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
3  BRYAN A. KOHM (CSB No. 233276)
   bkohm@fenwick.com
4  ADAM M. LEWIN (CSB No. 284905)
   alewin@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone:   415.875.2300
7  Facsimile:   415.281.1350

8  Attorneys for Defendant
   NEXTDOOR.COM, INC.

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13  FATDOOR, INC. and RAJ ABHYANKER,          Case No. 5:14-cv-02335-BLF

14              Plaintiffs,                    **DEFENDANT NEXTDOOR.COM, INC.'S**
                                               **ANSWER AND COUNTERCLAIMS TO**
15      v.                                     **FIRST AMENDED COMPLAINT**
                                               **(DKT. 35)**
16  NEXTDOOR.COM, INC.,
                                               **JURY TRIAL DEMANDED**
17              Defendant.
                                               Date Action Filed:    May 20, 2014
18

19       Defendant Nextdoor.com, Inc., by and through its undersigned counsel, answers the first

20  amended complaint of Plaintiff Fatdoor, Inc. (Dkt. 35) (the "FAC") as follows:

21                  **PARTIES, JURISDICTION, AND VENUE**

22       1.      Defendant lacks knowledge or information sufficient to form a belief as to the

23  truth or falsity of the allegations of paragraph 1 of the FAC and therefore denies them.

24       2.      Defendant lacks knowledge or information sufficient to form a belief as to the

25  truth or falsity of the allegations of paragraph 2 of the FAC and therefore denies them.

26       3.      Defendant lacks knowledge or information sufficient to form a belief as to the

27  truth or falsity of the allegations of paragraph 3 of the FAC and therefore denies them.

28       4.      Defendant lacks knowledge or information sufficient to form a belief as to the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

truth or falsity of the allegations of paragraph 4 of the FAC and therefore denies them.

5.      Defendant admits that U.S. Patent Nos. 8,775,328, 8,732,091, and 8,738,545 have improperly issued and are asserted in the FAC.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 5 of the FAC and therefore denies them.

6.      Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 6 of the FAC and therefore denies them.

7.      Defendant admits the allegations of paragraph 7 of the FAC.

8.      Defendant admits that Plaintiffs purport to allege a claim of patent infringement arising under the Patent Act, 35 U.S.C. § 1 *et seq*.  Defendant admits that the Court has subject matter jurisdiction over patent infringement actions pursuant to 28 U.S.C. §§ 1331 and 1338(a). Defendant lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 8 of the FAC and therefore denies them.

9.      Defendant admits that personal jurisdiction and venue are proper in this district. Defendant denies the remaining allegations of paragraph 9 of the FAC.

**INTRADISTRICT ASSIGNMENT**

10.      Defendant admits the allegations of paragraph 10 of the FAC.

**THE '328 PATENT**

11.      Defendant admits that Exhibit A to the FAC on its face appears to be United States Patent No. 8,775,328 (the "'328 patent"), which bears the title "GEO-SPATIALLY CONSTRAINED PRIVATE NEIGHBORHOOD SOCIAL NETWORK," and identifies an issuance date of July 8, 2014.  Defendant denies that Fatdoor is the "full owner of interest" in the '328 patent and that the patent was duly issued.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 11 of the FAC and therefore denies them.

12.      Defendant admits that, on its face, Claim 14 of the '328 patent includes the limitation "wherein the online neighborhood social network has a domain name of nextdoor having a generic top-top [*sic*] level suffix of com," which was added to the patent by Mr.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Abhyanker long after launch of defendant Nextdoor.com's website in a transparent attempt to claim that he invented in 2013 the website launched by Nextdoor.com in 2011.  Defendant denies the remaining allegations of paragraph 12 of the FAC.

13.     Defendant admits that, in his Notice of Allowance, Examiner Feeney erroneously agreed with Raj Abhyanker's remarks regarding the incorporation of matter from the '194 application into the '328 application.  Defendant denies the remaining allegations of paragraph 13 of the FAC.

14.     Defendant admits that Exhibit B on its face purports to be United States Application No. 11/603,442 (the "'442 application) and that the '442 application was published on September 20, 2007.

15.     Defendant admits that the '442 application bears the title "MAP BASED NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION."

16.     Defendant admits that U.S. Patent Application No. 11/603,442, which is owned by Google, references the domain name nextdoor.com.

17.     Defendant admits that Raj Vasant Abhyanker is the inventor listed on the '442 application.

18.     Defendant lacks information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 18 of the FAC and therefore denies them.

19.     Defendant lacks information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 19 of the FAC and therefore denies them.

20.     Defendant lacks information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 20 of the FAC and therefore denies them.

21.     Defendant lacks information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 21 of the FAC and therefore denies them.

22.     Defendant lacks information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22 of the FAC and therefore denies them.

23.     Defendant denies the allegations of paragraph 23 of the FAC.

24.     Defendant admits that, during prosecution, Examiner Feeney erroneously stated:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   "Applicant and the Examiner discussed the claims and support in the prior applications & agreed

2   that the claimed subject matter is also supported in the parent applications."  Defendant lacks

3   information sufficient to form a belief as to the truth or falsity of the remaining allegations of

4   paragraph 24 of the FAC and therefore denies them.

5       25.     Defendant admits that, during prosecution, Examiner Feeney erroneously stated:

6   "The Examiner agrees with Applicant's remarks regarding the incorporation of the matter from

7   parent application 11/653,194, which is a continuation in part of application 11 /603,442 is proper

8   and does not add any new matter to the instant application."  Defendant lacks information

9   sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 25 of

10  the FAC and therefore denies them.

11      26.     Defendant admits that the '328 patent purports to be a continuation-in-part of the

12  '194 application.  Defendant denies the remaining allegations of paragraph 26 of the FAC.

13      27.     Defendant lacks information sufficient to form a belief as to the truth or falsity of

14  the remaining allegations of paragraph 27 of the FAC and therefore denies them.

15      28.     Defendant lacks information sufficient to form a belief as to the truth or falsity of

16  the remaining allegations of paragraph 28 of the FAC and therefore denies them.

17      29.     Defendant admits that, on its face, the '328 patent does not include a terminal

18  disclaimer.  Defendant denies the remaining allegations of paragraph 29 of the FAC.

19      30.     Defendant denies the allegations of paragraph 30 of the FAC.

**THE '091 PATENT**

21      31.     Defendant admits that Exhibit C to the FAC on its face appears to be United States

22  Patent No. 8,732,091 (the "'091 patent"), which bears the title "SECURITY IN A GEO-

23  SPATIAL ENVIRONMENT," and identifies an issuance date of May 20, 2014.  Defendant

24  denies that Plaintiff Fatdoor is the full owner of interest in the '091 patent and that the patent was

25  duly issued.  Defendant lacks knowledge or information sufficient to form a belief as to the truth

26  or falsity of the remaining allegations of paragraph 31 of the FAC and therefore denies them.

**THE '545 PATENT**

28      32.     Defendant admits that Exhibit D to the FAC on its face appears to be United States

Fenwick & West LLP
Attorneys at Law
San Francisco

Patent No. 8,738,545 (the "'545 patent"), which bears the title "MAP BASED

NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION," and identifies an

issuance date of May 27, 2014.  Defendant denies that Plaintiff Fatdoor is the full owner of

interest in the '545 patent and that the patent was duly issued.  Defendant lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations of

paragraph 32 of the FAC and therefore denies them.

**DEFENDANT'S ACTIVITIES**

33.     Defendant admits that Exhibit E to the FAC purports to be screenshots of

Defendant's demo website.  Defendant denies the remaining allegations of paragraph 33 of the

FAC.

34.     Defendant denies the allegations of paragraph 34 of the FAC.

35.     Defendant denies the allegations of paragraph 35 of the FAC.

36.     Defendant admits that Raj Abhyanker ("Abhyanker"), purportedly acting on behalf

of Fatdoor, contacted Defendant on May 27, 2014 and on July 8, 2014, and that these

communications are reproduced in Exhibits G and H, respectively.  Defendant denies that these

requests have gone largely ignored, as Defendant has offered to permit Abhyanker and Fatdoor to

withdraw their claims without Defendant seeking sanctions or attorneys' fees owed to Defendant

for Abhyanker's litigation misconduct, including bringing unsupported claims in bad faith,

tampering of evidence submitted to the Court and making false statements to the Court.

Defendant further denies that Fatdoor and/or Abhyanker own the patents that Fatdoor purports to

offer to license because to the extent that any valid patent rights exist, Fatdoor and Abhyanker are

not entitled to ownership rights in those patents.  Defendant denies the remaining allegations of

paragraph 36 of the FAC.

37.     Defendant denies the allegations of paragraph 37 of the FAC.

**CAUSE OF ACTION (WILLFUL INFRINGEMENT OF '328 PATENT)**

38.     Defendant incorporates and restates its responses to the allegations set forth in

paragraphs 1 through 37 of the FAC.

39.     Defendant denies the allegations of paragraph 39 of the FAC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

40.     Defendant denies the allegations of paragraph 40 of the FAC.

41.     Defendant denies the allegations of paragraph 41 of the FAC.

42.     Defendant denies the allegations of paragraph 42 of the FAC.

43.     Defendant admits that Abhyanker, purportedly acting on behalf of Fatdoor, contacted counsel for Nextdoor on July 8, 2014 and that this communication is reproduced in Exhibit H to the FAC.  Defendant admits that the '328 patent was referenced in this communication.  Defendant denies that this communication was in good faith, as Fatdoor and Abhyanker are aware that (i) to the extent that any valid patent rights exist, Fatdoor and Abhyanker have no ownership interest in them; (ii) the patents issued to Abhyanker asserted in this case were obtained through inequitable conduct by Abhyanker during the prosecution of the patents, thus rendering them all unenforceable; and (iii) the patents are invalid because the effective priority dates for the patents are either in 2013 or 2014.

44.     Defendant admits that in Abhyanker's communication of July 8, 2014, Abhyanker requested a response by Friday, July 11, 2014 at 1 p.m.

45.     Defendant admits that counsel to Nextdoor did not respond to Abhyanker's communication of July 8, 2014 prior to the filing of the FAC.  Defendant denies that Nextdoor's counsel has not otherwise communicated with Abhyanker.

46.     Defendant denies that the request has gone largely ignored, as Defendant offered to permit Abhyanker and Fatdoor, subject to certain conditions, to withdraw their claims without Defendant seeking sanctions or attorneys' fees owed to Defendant for Abhyanker's litigation misconduct, including bringing unsupported claims in bad faith, tampering of evidence submitted to the Court and making false statements to the Court.  Defendant further denies that Fatdoor and/or Abhyanker own the patents that Fatdoor purports to offer to license because to the extent that any valid patent rights exist, Fatdoor and Abhyanker are not entitled to ownership rights in those patents.  Defendant denies the remaining allegations of paragraph 46 of the FAC.

**CAUSE OF ACTION (WILLFUL INFRINGEMENT OF '091 PATENT)**

47.     Defendant incorporates and restates its responses to the allegations set forth in paragraphs 1 through 46 of the FAC.

48.     Defendant denies the allegations of paragraph 48 of the FAC.

49.     Defendant denies the allegations of paragraph 49 of the FAC.

50.     Defendant denies the allegations of paragraph 50 of the FAC.

51.     Defendant denies the allegations of paragraph 51 of the FAC.

52.     Defendant admits that Abhyanker, purportedly acting on behalf of Fatdoor, contacted counsel for Nextdoor on May 27, 2014 and that this communication is reproduced in Exhibit G to the FAC.  Defendant admits that the '091 patent was referenced in this communication.  Defendant denies that this communication was in good faith, as Fatdoor and Abhyanker are aware that (i) to the extent that any valid patent rights exist, Fatdoor and Abhyanker have no ownership interest in them; (ii) the patents issued to Abhyanker asserted in this case were obtained through inequitable conduct by Abhyanker during the prosecution of the patents, thus rendering them all unenforceable; and (iii) the patents are invalid because the effective priority dates for the patents are either in 2013 or 2014.

53.     Defendant denies the allegations in paragraph 53 of the FAC.

54.     Defendant admits that neither executives of Nextdoor nor counsel to Nextdoor responded to Abhyanker's communication of May 27, 2014 by June 8, 2014.

55.     Defendant denies that Plaintiff's requests have gone largely ignored, as Defendant has offered to permit Abhyanker and Fatdoor, subject to certain conditions, to withdraw their claims without Defendant seeking sanctions or attorneys' fees owed to Defendant for Abhyanker's litigation misconduct, including bringing unsupported claims in bad faith, tampering of evidence submitted to the Court and making false statements to the Court.  Defendant further denies that Fatdoor and/or Abhyanker own the patents that Fatdoor purports to offer to license because to the extent that any valid patent rights exist, Fatdoor and Abhyanker are not entitled to ownership rights in those patents.  Defendant denies the remaining allegations of paragraph 55 of the FAC.

**CAUSE OF ACTION (WILLFUL INFRINGEMENT OF '545 PATENT)**

56.     Defendant incorporates and restates its responses to the allegations set forth in paragraphs 1 through 55 of the FAC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

57.     Defendant denies the allegations of paragraph 57 of the FAC.

58.     Defendant denies the allegations of paragraph 58 of the FAC.

59.     Defendant denies the allegations of paragraph 59 of the FAC.

60.     Defendant denies the allegations of paragraph 60 of the FAC.

61.     Defendant admits that Raj Abhyanker, purportedly acting on behalf of Fatdoor, contacted counsel for Nextdoor on May 27, 2014 and that this communication is reproduced in Exhibit G to the FAC.  Defendant admits that the '545 patent was referenced in this communication.  Defendant denies that this communication was in good faith, as Fatdoor and Abhyanker are aware that (i) to the extent that any valid patent rights exist, Fatdoor and Abhyanker have no ownership interest in them; (ii) the patents issued to Abhyanker asserted in this case were obtained through inequitable conduct by Abhyanker during the prosecution of the patents, thus rendering them all unenforceable; and (iii) the patents are invalid because the effective priority dates for the patents are either in 2013 or 2014.

62.     Defendant denies the allegations in paragraph 62 of the FAC.

63.     Defendant admits that neither executives of Nextdoor nor counsel to Nextdoor responded to Abhyanker's communication of May 27, 2014 by June 8, 2014.

64.     Defendant denies that Plaintiff's requests have gone largely ignored, as Defendant has offered to permit Abhyanker and Fatdoor, subject to certain conditions, to withdraw their claims without Defendant seeking sanctions or attorneys' fees owed to Defendant for Abhyanker's litigation misconduct, including bringing unsupported claims in bad faith, tampering of evidence submitted to the Court and making false statements to the Court.  Defendant further denies that Fatdoor and/or Abhyanker own the patents that Fatdoor purports to offer to license because to the extent that any valid patent rights exist, Fatdoor and Abhyanker are not entitled to ownership rights in those patents.  Defendant denies the remaining allegations of paragraph 64 of the FAC.

## REQUEST FOR RELIEF

65.     Defendant denies that Plaintiff is entitled to any of the relief requested in the FAC. Defendant denies all averments in the FAC that have not been specifically admitted in paragraphs

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  |  1-64 above.

2  |  **DEMAND FOR JURY TRIAL**

3  |  66.     Plaintiff's demand for a jury trial does not require a response.

4  |  **ADDITIONAL DEFENSES**

5  |  67.     Defendant asserts the following additional defenses to the complaint.  In doing so,

6  |  Defendant does not assume any burden of proof on any issue that is Plaintiff's burden as a matter

7  |  of law.  Defendant also reserves the right to amend or supplement these defenses as additional

8  |  facts become known.

9  |  **FIRST DEFENSE: FAILURE TO STATE A CAUSE OF ACTION**

10 |  68.     The complaint fails to state a cause of action against Defendant for which relief

11 |  can be granted.

12 |  **SECOND DEFENSE: NON-INFRINGEMENT ('328 PATENT)**

13 |  69.     Defendant has not infringed, and currently does not infringe, any valid claim of the

14 |  '328 patent and is not liable for any infringement.

15 |  **THIRD DEFENSE: INVALIDITY ('328 PATENT)**

16 |  70.     The '328 patent is invalid for failure to meet one or more of the conditions for

17 |  patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto,

18 |  including, without limitation, one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

19 |  **FOURTH DEFENSE: NON-INFRINGEMENT ('091 PATENT)**

20 |  71.     Defendant has not infringed, and currently does not infringe, any valid claim of the

21 |  '091 patent and is not liable for any infringement.

22 |  **FIFTH DEFENSE: INVALIDITY ('091 PATENT)**

23 |  72.     The '091 patent is invalid for failure to meet one or more of the conditions for

24 |  patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto,

25 |  including, without limitation, one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

26 |  **SIXTH DEFENSE: NON-INFRINGEMENT ('545 PATENT)**

27 |  73.     Defendant has not infringed, and currently does not infringe, any valid claim of the

28 |  '545 patent and is not liable for any infringement.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**SEVENTH DEFENSE: INVALIDITY ('545 PATENT)**

74.     The '545 patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

**EIGHTH DEFENSE: ESTOPPEL**

75.     The relief sought by Plaintiff is barred, in whole or in part, under the doctrine of prosecution history estoppel due to Plaintiff's (or Plaintiff's predecessor-in-interest's) prior conduct, including the amendment, cancellation, or abandonment of claims before the United States Patent and Trademark Office and/or admissions or other statements made to the United States Patent and Trademark Office during prosecution of the '328 patent, the '091 patent, the '545 patent, or related patent applications.

**NINTH DEFENSE: DEDICATION TO THE PUBLIC**

76.     The relief sought by Plaintiff is barred, in whole or in part, because Plaintiff dedicated to the public all methods, systems, and products disclosed in the '328 patent, the '091 patent, and/or the '545 patent but not literally claimed therein.

**TENTH DEFENSE: LACK OF STANDING**

77.     Plaintiff lacks standing to assert infringement of the '328 patent, the '091 patent, and/or the '545 patent because it did not have sufficient rights in the '328 patent, the '091 patent, and/or the '545 patent at the time the suit was filed.

**ELEVENTH DEFENSE: LACK OF OWNERSHIP**

78.     Plaintiff is barred from obtaining all, or part of, the relief it seeks because it lacks sufficient ownership interests in the '328 patent, the '091 patent, and/or the '545 patent to pursue claims of infringement against Defendant.

**TWELFTH DEFENSE: UNAVAILABILITY OF INJUNCTIVE RELIEF**

79.     Plaintiff is not entitled to injunctive relief, as a matter of law, and cannot satisfy the requirements applicable to its request for injunctive relief in any form.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## THIRTEENTH DEFENSE: INEQUITABLE CONDUCT ('091 PATENT)

### Introduction

80.     The '091 patent, and each claim thereof, is unenforceable due to inequitable conduct during its prosecution.

81.     During prosecution of the '091 patent, Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized information that he knew would have been important to a reasonable examiner in determining whether to issue the patent.

82.     Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized this material information with a specific intent to deceive the United States Patent and Trademark Office ("USPTO").

83.     Abhyanker filed U.S. Patent Application No. 14/151,844 (the "'844 application") on January 10, 2014.  The '844 application issued as the '091 patent.

84.     Abhyanker, the named inventor of the '844 application, served as patent prosecution counsel for the '844 application.

85.     Abhyanker's USPTO registration number, submitted with his filings in the '844 application, is Reg. No. 45474.

### Improper Claims of Priority

86.     Upon information and belief, Abhyanker, as a licensed patent attorney, is familiar with the rules governing the patent process.

87.     Specifically, upon information and belief, Abhyanker knew at the time he filed the '844 application that in order to claim the benefit of an earlier application's priority date, 1) the invention disclosed in the earlier application must support the claims of the later application, and 2) the two applications must have been co-pending.

88.     The USPTO issued and mailed a non-final rejection on March 17, 2014, rejecting all pending claims of the '844 application in light of Kaplan, Dan, "Fatdoor turns neighborhoods into online social networks," May 28, 2007 ("Kaplan").

89.     Kaplan described the public use and sale of Fatdoor services offered by a previous company called Fatdoor, Inc. ("Fatdoor I") which Raj Abhyanker, the CEO of the later entity,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plaintiff Fatdoor, Inc. also served as CEO.

90.     Upon information and belief, Abhyanker and therefore Plaintiff Fatdoor, Inc. knew that Fatdoor I offered services similar to those claimed in the pending claims of the '844 application.

91.     The USPTO rejected independent claim 1 of the '844 application as anticipated by Kaplan because it "discloses a neighborhood communication system: a privacy server: to verify that each user of the community network lives at a residence associated with a claimable residential address of the community network formed through a social community module of a privacy server using a processor and a memory; to obtain from each user of the community network, using the processor of a computing device, member data associated with each user, the member data including an address; to associate the address with a profile of each user; to determine a location of each user based on the member data; to store the member data in a database; and to obtain a personal address privacy preference from each user, the personal address privacy preference specifying if the address should be displayed to other users; and a mapping server associated with the privacy server through a network to generate a geospatial representation of a set of points on a map defining residences associated with each use of the community network having the member data."

92.     The USPTO rejected independent claim 13 of the '844 application as anticipated by Kaplan because it "discloses [a] method of organizing a community network, comprising: verifying that each user of the community network lives at a residence associated with a claimable residential address of the community network formed through a social community module of a privacy server using a processor and a memory; obtaining from each user of the community network, using the processor of a computing device, member data associated with each user, the member data including an address; associating the address with a profile of each user; determining a location of each user based on the member data; storing the member data in a database; and obtaining a personal address privacy preference from each user, the personal address privacy preference specifying if the address should be displayed to other users."

93.     The USPTO rejected independent claim 25 of the '844 application as anticipated

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

by Kaplan because it "discloses a neighborhood communication system comprising: a privacy server: to verify that each user of the community network lives at a residence associated with a claimable residential address of the community network formed through a social community module of a privacy server using a processor and a memory; to obtain from each user of the community network, using the processor of a computing device, member data associated with each user, the member data including an address; to associate the address with a profile of each user; to determine a location of each user based on the member data; to store the member data in a database; and to obtain a personal address privacy preference from each user, the personal address privacy preference specifying if the address should be displayed to other users; a network; and a mapping server associated with the privacy server through a network:  to generate a geospatial representation of a set of points on a map defining residences associated with each use of the community network having the member data, determine that a marker is colliding with another marker simultaneously displayed in a map based on an overlap area of the marker with the another marker, automatically create a group pointer that replaces the marker and the another marker on the map, generate a view of the marker and the another marker when a user selects the group pointer, and determine that the marker, the another marker, and different markers are associated with a shared structure based on address data associated with occupants represented through the marker, the another marker and the different markers."

94.     Abhyanker submitted a Response to Non-Final Office Action on March 26, 2014 (the "Response").

95.     In the Response, Abhyanker contested the USPTO's determination that Kaplan anticipated the pending claims of the '844 application.

96.     Abhyanker represented to the USPTO that Kaplan was disqualified as prior art on the ground that the '844 application was entitled to a priority date of March 17, 2006.

97.     Abhyanker represented to the USPTO that the pending claims of the '844 application were entitled to claim priority to U.S. Patent Application 11/653,194 (the "'194 application"), filed on January 12, 2007, which in turned claimed priority to U.S. Patent Application No. 11/603,442 (the "'442 application"), filed on November 22, 2006.

13

98.   The '442 application claims priority to U.S. Provisional Application 60/783,226, filed on March 17, 2006.

99.   Abhyanker's claims for priority in the '844 application to the '442 and '194 applications are improper.  For example, a pending claim is entitled to the benefit of the filing date of an earlier-filed application only if that earlier-filed application discloses each and every element of the pending claim.

100.   As such, by representing to the USPTO that the pending claims of the '844 application were entitled to the filing dates of the '194 and '442 applications, Abhyanker in effect represented that the specifications of the '194 and '442 applications each fully disclosed the subject matter of the pending claims of the '844 application.

101.   This representation by Abhyanker to the USPTO as to the '194 application was incorrect.  None of the pending '844 claims was supported by the '194 application.

102.   By way of example, the concept of a "privacy preference," a central feature of all claims of the '844 application, is found nowhere in the disclosures of the '194 application.

103.   Similarly, Abhyanker's representation to the USPTO as to the '442 application was incorrect.  None of the pending claims in the '844 application was supported by the '442 application

104.   By way of example, the concept of a "privacy preference," a central feature of all claims of the '844 application, is found nowhere in the disclosures of the '442 application.

105.   On information and belief, Abhyanker intentionally made these representations, knowing them to be incorrect, in order to mislead the USPTO as to the content of the '442 and '194 applications.

106.   Abhyanker is the sole inventor listed on the '442 and '194 applications, filed in 2006 and 2007 respectively.  Abhyanker thus is familiar with the subject matter disclosed in those applications.

107.   Given his status the sole inventor of the '442 and '194 applications, Abhyanker knew that those applications did not fully support the pending claims of the '844 application, including without limitation that those applications did not disclose a "privacy preference."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

108. Additionally, the '844 application fails to meet the co-pendency requirement at least with respect to the '442 application. The '442 application was abandoned on June 24, 2009. Abhyanker later filed the '844 application on January 10, 2014, identifying the '844 application as a continuation-in-part of the '442 application.

109. Thus, the '844 application and '442 application were not co-pending.

110. Upon information and belief, Abhyanker recognized after he filed the '844 application that co-pendency was lacking.

111. On January 21, 2014—over four years after the '442 application was abandoned and eleven days after filing the '844 application—Abhyanker filed a request for continued examination of the '442 application in a sham effort to establish co-pendency.

112. However, because the '442 application was abandoned at the time Abhyanker filed the '844 application, the '844 application was not co-pending with the '442 application.

113. Upon information and belief, Abhyanker knew that the '442 application and '194 application disclosures did not support any of the pending claims of the '844 application and that co-pendency was lacking at least between the '091 patent application and the '442 application.

114. Abhyanker's misrepresentations concerning the co-pendency of the '442 application and the entitlement of the '844 application to the priority dates of the '194 and '442 applications were material, as evidenced at least by the USPTO's rejection of the pending claims of the '844 application in light of Kaplan and the USPTO's withdrawal its rejection in response to Abhyanker's misrepresentations concerning the '194 and '442 applications.

115. Absent these misrepresentations, the USPTO would not have disqualified Kaplan as prior art.

116. Moreover, upon information and belief, Abhyanker knew that his improper claims of priority to the '442 and '194 applications were material to the patentability of the pending claims of the '844 application.

117. Abhyanker exhibited as much during the prosecution of the '844 application. As noted above, in his Response, Abhyanker argued that Kaplan should be disqualified because the pending claims of the '844 application were entitled to claim the benefit of the '194 and '442

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   applications.

2       118.    Upon further information and belief, Abhyanker had the specific intent of claiming

3   priority to the '442 and '194 applications in an attempt to deceive the USPTO and avoid prior art,

4   such as the public use of the Fatdoor services by Fatdoor I, that a reasonable examiner would rely

5   upon to reject the pending claims of the '844 application.  Those claims, now issued as the '091

6   patent, would stand rejected but for Abhyanker's improper claims of priority to the '194 and '442

7   applications.

8       119.    Abhyanker's claims of priority in the '844 application misrepresented information

9   material to patentability.

10      120.    Upon information and belief, Abhyanker specifically intended to deceive the

11  USPTO as to whether the pending claims of the '844 application were entitled to the priority date

12  of either the '194 application or '442 application.

### Misrepresentation Regarding AIA Rules

14      121.    In addition to his material misrepresentation of the '091 patent's priority date,

15  Abhyanker omitted material information when, during the '844 application's prosecution, he did

16  not indicate to the USPTO that the '091 patent application should be examined under the first-to-

17  file provisions of the America Invents Act ("AIA") because it has at least one claim with an

18  effective filing date after March 16, 2013.

19      122.    Upon information and belief, Abhyanker, a licensed patent attorney, knew that the

20  '844 application, a continuation-in-part filed in 2014, had at least one claim with an effective date

21  after March 16, 2013.

22      123.    Nevertheless, Abhyanker did not check the box provided on a USPTO form to

23  indicate that the '844 application should be examined under AIA rules, upon information and

24  belief, with the specific intent of deceiving the USPTO and avoiding prior art, such as the public

25  use of Fatdoor services.

26      124.    Had Abhyanker properly indicated that the '844 application should be examined

27  according to the AIA, one or more claims would have been accorded the January 10, 2014 '844

28  application filing date, and the USPTO would have rejected those claims in view of Kaplan.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

125.    Abhyanker's contention that the '844 application should be examined according to pre-AIA rules misrepresented information material to patentability.

126.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to whether the pending claims of the '844 application were entitled to be examined under pre-AIA rules.

### Failure to Disclose References Relied on by the USPTO During Prosecution of Another Patent Application

127.    During prosecution of the '844 application, Abhyanker contended that the '844 application was entitled to the benefit of the '194 application's priority date.

128.    This contention was an effort to support his improper priority claims.

129.    Accordingly, and by Abhyanker's own representation, the '194 application discloses similar subject matter to that claimed by the '844 application.

130.    Abhyanker did not disclose the following references to the USPTO during the prosecution of the '844 application: Publication No. US-2001/0005829 by Raveis ("Raveis"); Publication No. US-2006/0022048 by Johnson ("Johnson"); and Publication No. US-2007/1056429 by Godar ("Godar").

131.    The USPTO cited Raevis in support of a non-final rejection of the '194 application issued on May 10, 2011.

132.    The USPTO cited Johnson in support of a final rejection of the '194 application issued on December 10, 2012.

133.    The USPTO cited Godar in support of a non-final rejection of the '194 application issued on January 28, 2014.

134.    That the USPTO cited these references in support of its rejection of the '194 application, particularly in view of Abhyanker's argument of this application's relevance to the '844 application's claims, confirms that the USPTO would have considered them prior art material to the patentability of the '844 application.

135.    Upon information and belief, and in view of Abhyanker's knowledge that his claims of priority were improper (as well his contemporaneous knowledge of the USPTO's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

rejection of such a priority date in connection with the '612 application that led to the '545 patent, as explained below), Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '844 application.

136.    Abhyanker nonetheless did not disclose Raevis, Johnson, or Godar during prosecution of the '844 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

137.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Raevis, Johnson, and Godar.

### Failure to Disclose References Identified by the USPTO During Prosecution of Another Patent Application

138.    Abhyanker also did not disclose the following references to the USPTO during the prosecution of the '844 application: Publication No. US-2004/0039581 by Wheeler ("Wheeler"); Publication No. US-2006/0190279 by Heflin ("Heflin"); Publication No. US-2003/022807 by Hoffman ("Hoffman"); and Publication No. US-2005/0203768 by Florance ("Florance").

139.    In a non-final rejection of the '194 application issued on January 28, 2014, the USPTO notified Abhyanker that it considered all of these references relevant to the '194 application even though it had not specifically outlined their application under 35 U.S.C. §§ 102 or 103.  The USPTO advised Abhyanker to review these references in particular.

140.    That the USPTO identified these references as relevant in support of its rejection of the '194 application, particularly in view of Abhyanker's arguments that the '194 application fully discloses the invention(s) claimed in the '844 application, confirms that the USPTO would have considered it to be prior art material to the patentability of the '844 application.

141.    Upon information and belief, and in view of Abhyanker's knowledge that his claims of priority were improper (as well his contemporaneous knowledge of the USPTO's rejection of such a priority date in connection with the '612 application that led to the '545 patent, as explained below), Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '844 application.

142.    Abhyanker nonetheless did not disclose Wheeler, Heflin, Hoffman, or Florance

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

during prosecution of the '844 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

143.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Wheeler, Heflin, Hoffman, and Florance.

**Failure to Disclose Nextdoor.com Website**

144.    Abhyanker also did not disclose the existence of Defendant's website, Nextdoor.com, and services and features provided therein, in an information disclosure statement during prosecution of the '844 application.

145.    Nextdoor.com launched to the general public in October 2011, although it had been in public beta testing since early 2011.

146.    Given that Abhyanker has, on the day of issuance, accused the Nextdoor.com website of infringing the '091 patent, Abhyanker knew that the USPTO would have considered the Nextdoor.com website material to patentability.

147.    Upon information and belief, and in view of Abhyanker's knowledge that his claims of priority were improper, as well his contemporaneous knowledge of the USPTO's rejection of such a priority date in connection with the '612 application that led to the '545 patent, as explained below, Abhyanker knew that the USPTO would have considered Nextdoor.com to be prior art material to the patentability of the '844 application.

148.    Abhyanker nonetheless did not disclose the Nextdoor.com website during prosecution of the '844 application even though he knew that the USPTO would have considered it to be prior art material to patentability.

149.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as the Nextdoor.com website.

**Conclusion**

150.    In sum, on information and belief, Abhyanker, the inventor and patent attorney for the '091 patent, misrepresented and omitted material information with the intent to deceive the USPTO to ensure the issuance of the '091 patent.

151.    By reason of this inequitable conduct, the '091 patent and all related patents are

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   unenforceable.

2       152.    The '091 patent is further unenforceable as a result of Abhyanker's inequitable

3   conduct committed during the prosecution of related patent applications, including without

4   limitation U.S. Patent Application No. 14/203,531, addressed below, and U.S. Patent Application

5   No. 14/144,612, addressed below.

6       **FOURTEENTH DEFENSE: INEQUITABLE CONDUCT ('545 PATENT)**

7                            **Introduction**

8       153.    The '545 patent, and each claim thereof, is unenforceable due to inequitable

9   conduct during its prosecution.

10      154.    During prosecution of the '545 patent, Abhyanker failed to disclose, withheld,

11  concealed, and/or mischaracterized information that he knew would have been important to a

12  reasonable examiner in determining whether to issue the patent.

13      155.    Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized this

14  material information with a specific intent to deceive the United States Patent and Trademark

15  Office ("USPTO").

16      156.    Abhyanker filed U.S. Patent Application No. 14/144,612 (the "'612 application")

17  on December 31, 2013.  The '612 application issued as the '545 patent.

18      157.    Abhyanker, the named inventor of the '612 application, served as patent

19  prosecution counsel for the '612 application.

20      158.    Abhyanker's USPTO registration number, submitted with his filings in the '612

21  application, is Reg. No. 45474.

22                      **Improper Claims of Priority**

23      159.    Upon information and belief, Abhyanker, as a licensed patent attorney, is familiar

24  with the rules governing the patent process.

25      160.    Specifically, upon information and belief, Abhyanker knew at the time he filed the

26  '612 application that in order to claim the benefit of an earlier application's priority date, 1) the

27  invention disclosed in the earlier application must support the claims of the later application, and

28  2) the two applications must have been co-pending.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

161.     The USPTO issued and mailed a non-final rejection on March 6, 2014, rejecting all pending claims of the '612 application.

162.     The USPTO's rejection stood in part on the ground that Abhyanker's priority claims were improper and that, instead, the claims of the '612 application were entitled to an effective filing date of December 31, 2013.

163.     The USPTO further based its rejection under 35 U.S.C. 103(a), finding that the claims of the '612 application were unpatentable over Abhyanker's own '442 application and U.S. Patent Application No. 11/717,807 (the "'087 application), filed in 2006 and 2007, respectively.

164.     Abhyanker submitted a response to the non-final office action on March 10, 2014 (the "'612 Response").

165.     In the '612 Response, Abhyanker contested the USPTO's determination that the claims of the '612 application were entitled to an effective filing date of December 31, 2013.

166.     Abhyanker represented to the USPTO that the pending claims of the '612 application were entitled to claim priority to the '194 application, filed on January 12, 2007, which in turned claimed priority to the '442, filed on November 22, 2006.

167.     The '442 application claims priority to U.S. Provisional Application 60/783,226, filed on March 17, 2006.

168.     Abhyanker's claims for priority in the '844 application to the '442 and '194 applications are improper.  For example, a pending claim is entitled to the benefit of the filing date of an earlier-filed application only if that earlier-filed application discloses each and every element of the pending claim.

169.     In the Response, Abhyanker specifically represented that the pending claims of the '612 application were "entirely supported" in the specification of the '194 application, as well as by the specifications of two other patent applications, Nos. 11/731,465 (the "'465 application") and 11/827,400 (the "'400 application").

170.     This representation by Abhyanker to the USPTO as to the '194, '465, and '400 applications was incorrect.  None of the pending claims of the '612 application was supported by

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

these applications.

171.    By way of example, the concept of conducting "high value crime and safety related discussions," which is central to all claims of the '612 application, is found nowhere in the disclosures of the '194, '465, or '400 applications.

172.    On information and belief, Abhyanker, a licensed patent attorney, intentionally made these representations, knowing them to be incorrect, in order to mislead the USPTO as to the content of the '194, '465, and '400 applications.

173.    Abhyanker is the sole inventor listed on the '194, '465, and '400 applications, all filed in 2007.  Abhyanker thus is familiar with the subject matter disclosed in those applications.

174.    Given his status as the sole inventor of the '194, '465, and '400 applications, Abhyanker knew that those applications did not fully support the pending claims of the '612 application, including without limitation that those applications did not disclose the concept of conducting "high value crime and safety related discussions."

175.    Additionally, the '612 application fails to meet the co-pendency requirement at least with respect to the '442 application.  The '442 application was abandoned on June 24, 2009.  Abhyanker later filed the '612 application on December 31, 2013.

176.    Thus, the '612 application and '442 application were not co-pending.

177.    Upon information and belief, Abhyanker recognized after he filed the '612 application that co-pendency was lacking.

178.    On January 21, 2014—over four years after the '442 application was abandoned and twenty-one days after filing the '612 application—Abhyanker filed a request for continued examination of the '442 application in a sham effort to establish co-pendency.

179.    However, because the '442 application was abandoned at the time Abhyanker filed the '612 application, the '612 application was not co-pending with the '442 application.

180.    Upon information and belief, Abhyanker knew that the '442 application and '194 application disclosures did not support any of the pending claims of the '612 application and that co-pendency was lacking at least between the '612 patent application and the '442 application.

181.    Abhyanker nonetheless represented in the Response of March 10, 2014 that the

Fenwick & West LLP
Attorneys at Law
San Francisco

'612 application was entitled to the benefit of the '442 application's priority date.

**Failure to Disclose Kaplan Reference Relied on by the USPTO or Other Fatdoor References During the Prosecution of Another Application**

182.    Abhyanker also did not disclose the following reference to the USPTO during the prosecution of the '612 application: Kaplan, Dan, "Fatdoor turns neighborhoods into online social networks," May 28, 2007 ("Kaplan").

183.    Kaplan describes the public use and sale of Fatdoor services offered by a previous company called Fatdoor, Inc. ("Fatdoor I") of which Raj Abhyanker, the CEO of the later entity, Plaintiff Fatdoor, Inc. also served as CEO.

184.    More generally, Abhyanker failed to disclose any references describing services offered by Fatdoor I, including the fatdoor.com website.

185.    Upon information and belief, Abhyanker knew that Fatdoor I offered services similar to those claimed in the pending claims of the '612 application.

186.    Abhyanker became aware of Kaplan in particular no later than March 17, 2014, at which time Kaplan was cited by the USPTO during prosecution of the '844 application in connection with a non-final rejection.

187.    Abhyanker did not disclose the office action wherein the examiner cited Kaplan.

188.    Abhyanker was personally involved in the development of Fatdoor I and was aware of services made publicly available at fatdoor.com.

189.    The '091 and '545 patents disclose and claim similar subject matter, and the '091 patent claims to be a continuation-in-part of the '612 application.

190.    Accordingly, material prior art to the '844 application would also have been material prior art to the '612 application.

191.    Upon information and belief, Abhyanker knew that the USPTO would have found Kaplan to be material to patentability because the USPTO had previously relied on Kaplan in issuing a rejection of the '844 application.

192.    During the prosecution of the '844 application, Abhyanker argued that Kaplan was not prior art to the '844 application because the '844 application was entitled to a priority date

prior to Kaplan's publication date of May 28, 2007, in particular, that of the '442 application, filed November 22, 2006.

193.    During the prosecution of the '612 application, Abhyanker argued that the '612 patent was also entitled to the '442 application's priority date.

194.    The USPTO rejected Abhyanker's claim of priority for the '612 application, instead according its claims an effective filing date of December 31, 2013.  The USPTO accordingly examined the '612 application under AIA rules.

195.    Upon information and belief, Abhyanker knew that the USPTO would have considered Kaplan to be prior art to the '612 application.

196.    Abhyanker nonetheless did not disclose Kaplan during prosecution of the '612 application even though he knew that the USPTO would have considered Kaplan to be prior art material to patentability.

197.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Kaplan.

198.    Upon information and belief, because Kaplan describes the operation of services then available at fatdoor.com, Abhyanker knew that the USPTO would have considered fatdoor.com, or any reference describing it, to be prior art to the '612 application.

199.    Abhyanker nonetheless did not disclose fatdoor.com, or any reference describing it, during prosecution of the '612 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

200.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as fatdoor.com or any reference describing it.

### Failure to Disclose Other References Relied on by the USPTO
### During the Prosecution of the '844 Application

201.    The USPTO cited several other references in support of the non-final rejection of the '844 application on March 17, 2014.  These include U.S. Patent No. 8,650,103, by Wilf et al. ("Wilf"); Publication No. US-2013/0282842, by Blecon et al. ("Blecon"); Publication No. US-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2011/0231268, by Ungos ("Ungos"); and an article from Wired.com entitled "Fatdoor CEO Talks about balancing security with community," by Russell ("Russell").

202.     That the USPTO cited these references in support of its rejection of the '844 application confirms that the USPTO would have considered them prior art material to the patentability of the '612 application.

203.     Upon information and belief, and in view of the USPTO's conclusion that the '612 application's claims were entitled to an effective filing date of December 31, 2013, Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '612 application.

204.     Abhyanker nonetheless did not disclose Wilf, Blecon, Ungos, or Russell during prosecution of the '612 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

205.     Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Wilf, Blecon, Ungos, and Russell.

### Failure to Disclose References Relied on by the USPTO During the Prosecution of the '194 and '400 Applications

206.     In addition, during prosecution of the '612 application, Abhyanker argued, in a March 10, 2014 response to a March 6, 2014 non-final rejection, that the independent claims of the '612 application "are entirely supported" in the specifications of the '194, '465, and '400 applications.

207.     Accordingly, and by Abhyanker's own representation, the '194, '465, and '400 applications disclose similar subject matter to that claimed by the '612 application.

208.     Abhyanker did not disclose the following references to the USPTO during the prosecution of the '612 application: Publication No. US-2001/0005829 by Raveis ("Raveis"); Publication No. US-2006/0022048 by Johnson ("Johnson"); Publication No. US-2007/1056429 by Godar ("Godar"); Publication No. 2008/0125969 by Chen ("Chen"); and Publication No. 2007/0203644 by Thota ("Thota").

209.     The USPTO cited Raevis in support of a non-final rejection of the '194 application

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

issued on May 10, 2011.

210.    The USPTO cited Johnson in support of a final rejection of the '194 application issued on December 10, 2012.

211.    The USPTO cited Godar in support of a non-final rejection of the '194 application issued on January 28, 2014.

212.    The USPTO cited Chen and Thota in support of a non-final rejection of the '400 application issued on April 12, 2011.

213.    That the USPTO cited these references in support of its rejection of the '194 and '400 applications, particularly in view of Abhyanker's argument of these applications' relevance to the '612 application's claims, confirms that the USPTO would have considered them prior art material to the patentability of the '612 application.

214.    Upon information and belief, and in view of the USPTO's conclusion that the '612 application's claims were entitled to an effective filing date of December 31, 2013, Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '612 application.

215.    Abhyanker nonetheless did not disclose Raevis, Johnson, Godar, Chen, and Thota during prosecution of the '612 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

216.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Raevis, Johnson, Godar, Chen, and Thota.

### Failure to Disclose References Identified by the USPTO During the Prosecution of the '194 Application

217.    Abhyanker also did not disclose the following references to the USPTO during the prosecution of the '612 application: Publication No. US-2004/0039581 by Wheeler ("Wheeler"); Publication No. US-2006/0190279 by Heflin ("Heflin"); Publication No. US-2003/022807 by Hoffman ("Hoffman"); and Publication No. US-2005/0203768 by Florance ("Florance").

218.    In a non-final rejection of the '194 application issued on January 28, 2014, the USPTO notified Abhyanker that it considered all of these references relevant to the '194

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

application even though it had not specifically outlined their application under 35 U.S.C. §§ 102 or 103. The USPTO advised Abhyanker to review these references in particular.

219.    That the USPTO identified these references as relevant in support of its rejection of the '194 application, particularly in view of Abhyanker's argument of this application's relevance to the '612 application's claims, confirms that the USPTO would have considered it to be prior art material to the patentability of the '612 application.

220.    Upon information and belief, and in view of the USPTO's conclusion that the '612 application's claims were entitled to an effective filing date of December 31, 2013, Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '612 application.

221.    Abhyanker nonetheless did not disclose Wheeler, Heflin, Hoffman, and Florance during prosecution of the '612 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

222.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Wheeler, Heflin, Hoffman, and Florance.

### Failure to Disclose the Nextdoor.com Website

223.    Abhyanker also did not disclose the existence of Defendant's website, Nextdoor.com, and services and features provided therein, in an information disclosure statement during prosecution of the '612 application.

224.    Nextdoor.com launched to the general public in October 2011, although it had been in public beta testing since early 2011.

225.    Given that Abhyanker has accused the Nextdoor.com website of infringing the '545 patent, Abhyanker knew that the USPTO would have considered the Nextdoor.com website material to patentability.

226.    Given that the USPTO accorded the '612 application's claims an effective filing date of December 31, 2013, Abhyanker knew that the USPTO would have considered Nextdoor.com to be prior art to the '612 application.

227.    Abhyanker nonetheless did not disclose the Nextdoor.com website during

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

prosecution of the '612 application even though he knew that the USPTO would have considered it to be prior art material to patentability.

228.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as the Nextdoor.com website.

**Conclusion**

229.    In sum, on information and belief, Raj Abhyanker, the inventor and patent attorney for the '545 patent, misrepresented and omitted material information with the intent to deceive the USPTO to ensure the issuance of the '545 patent.

230.    By reason of this inequitable conduct, the '545 patent and all related patents are unenforceable.

231.    The '545 patent is further unenforceable as a result of Abhyanker's inequitable conduct committed during the prosecution of related patent applications, including without limitation U.S. Patent Application Nos. 14/203,531, addressed below, and 14/151,844, addressed above.

**FIFTEENTH DEFENSE: INEQUITABLE CONDUCT ('328 PATENT)**
**Introduction**

232.    The '328 patent, and each claim thereof, is unenforceable due to inequitable conduct during its prosecution.

233.    During prosecution of the '328 patent, Raj Abhyanker ("Abhyanker") failed to disclose, withheld, concealed, and/or mischaracterized information that he knew would have been important to a reasonable examiner in determining whether to issue the patent.

234.    Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized this material information with a specific intent to deceive the United States Patent and Trademark Office ("USPTO").

235.    Abhyanker filed U.S. Patent Application No. 14/203,531 (the "'531 application") on March 10, 2014.  The '531 application issued as the '328 patent.

236.    Abhyanker, the named inventor of the '531 application, served as patent prosecution counsel for the '531 application.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

237.    Abhyanker's USPTO registration number, submitted with his filings in the '531 application, is Reg. No. 45474.

## **Improper Claims of Priority**

238.    Upon information and belief, Abhyanker, as a licensed patent attorney, is familiar with the rules governing the patent process.

239.    Specifically, upon information and belief, Abhyanker knew at the time he filed the '531 application that in order to claim the benefit of an earlier application's priority date, 1) the invention disclosed in the earlier application must support the claims of the later application, and 2) the two applications must have been co-pending.

240.    Abhyanker represented to the USPTO that the pending claims of the '531 application were entitled to claim priority to U.S. Patent Application 11/653,194 (the "'194 application"), filed on January 12, 2007, which in turned claimed priority to U.S. Patent Application No. 11/603,442 (the "'442 application"), filed on November 22, 2006.

241.    Abhyanker further represented that the '442 and '194 applications disclosed each and every element of the pending claims of the '531 application by submitting a claim chart to that effect to the USPTO.

242.    Additionally, the '531 application fails to meet the co-pendency requirement at least with respect to the '442 application because the '442 application was abandoned at the time Abhyanker field the '531 application.

243.    Upon information and belief, Abhyanker recognized that the '531 and '442 applications were not co-pending.

244.    For this reason, Abhyanker sought to claim the benefit of the '442 application's priority date by claiming priority to the '194 application.

245.    However, the '194 application's disclosure did not support the pending claims of the '531 application.

246.    Upon information and belief, Abhyanker recognized that the '194 application's disclosure did not support the pending claims of the '531 application.

247.    Therefore, in a preliminary amendment dated May 12, 2014, Abhyanker inserted

Fenwick & West LLP
ATTORNEYS AT LAW
SAN FRANCISCO

matter into the specification of the '531 application that is not found in the '194 application's disclosure.

248.   In the May 12, 2014 preliminary amendment, Abhyanker asserted that no new matter had been added, but instead that such matter was incorporated from the '442 application.

249.   This statement in the May 12, 2014 preliminary amendment is untrue. The '531 application adds new matter to the '194 application's disclosure.

250.   Abhyanker's misrepresentations concerning the entitlement of the '531 application to the priority dates of the '194 and '442 applications were material to patentability because the examiner would have accorded the '531 application an effective filing date of no earlier than March 10, 2014 absent these misrepresentations.

251.   The examiner would have then considered numerous other references to be prior art to the '531 application, including, without limitation, references describing the public use and sale of Fatdoor services offered by a previous company called Fatdoor, Inc. ("Fatdoor I") of which Raj Abhyanker, the CEO of the later entity, Plaintiff Fatdoor, Inc., also served as CEO. One such reference is Kaplan, Dan, "Fatdoor turns neighborhoods into online social networks," May 28, 2007 ("Kaplan"), which was cited in a non-final rejection of the '844 application (which issued as the '091 patent) on March 17, 2014.

252.   That the USPTO cited Kaplan in a rejection of the '091 patent, which discloses and claims similar subject matter as the '531 application and which claims priority to the same '194 application, confirms that the USPTO would have considered Kaplan to be a material prior art reference if it considered Kaplan to be prior art.

253.   Thus, Abhyanker's claims of priority in the '531 application misrepresented information material to patentability.

254.   Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to whether the pending claims of the '531 application were entitled to the priority date of the '194 application and the '442 application by extension.

### **Misrepresentation Regarding AIA Rules**

255.   In addition to his material misrepresentation of the '328 patent's priority date,

Fᴇɴᴡɪᴄᴋ & Wᴇsᴛ LLP
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
Sᴀɴ Fʀᴀɴᴄɪsᴄᴏ

Abhyanker omitted material information when, during the '531 application's prosecution, he did not indicate to the USPTO that the '328 patent application should be examined under the first-to-file provisions of the America Invents Act ("AIA") because it has at least one claim with an effective filing date after March 16, 2013.

256. Upon information and belief, Abhyanker, a licensed patent attorney, knew that the '531 application, purportedly a continuation but in fact a continuation-in-part filed in 2014 and containing new matter, had at least one claim with an effective date after March 16, 2013.

257. Nevertheless, Abhyanker did not check the box provided on a USPTO form to indicate that the '531 application should be examined under AIA rules, upon information and belief, with the specific intent of deceiving the USPTO and avoiding prior art, such as the public use of Fatdoor services.

258. Had Abhyanker properly indicated that the '531 application should be examined according to the AIA, one or more claims would have been accorded the March 10, 2014 '531 application filing date, and the USPTO would have rejected those claims in view of Kaplan.

259. Abhyanker's contention that the '531 application should be examined according to pre-AIA rules misrepresented information material to patentability.

260. Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to whether the pending claims of the '531 application were entitled to be examined under pre-AIA rules.

**Failure to Disclose References Relied on by USPTO During the Prosecution of the '844 Application**

261. The '091 patent that issued on the '844 application discloses and claims similar subject matter as the '328 application. The '091 patent claims to be a continuation-in-part of the '194 application, and the '328 claims to be a continuation of the '194 application.

262. Accordingly, material prior art to the '844 application would also have been material prior art to the '531 application.

263. The USPTO cited several references in support of the non-final rejection of the '844 application on March 17, 2014. These include U.S. Patent No. 8,650,103, by Wilf et al.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

("Wilf"); Publication No. US-2013/0282842, by Blecon et al. ("Blecon"); Publication No. US-2011/0231268, by Ungos ("Ungos"); and an article from Wired.com entitled "Fatdoor CEO Talks about balancing security with community," by Russell ("Russell").

264.     That the USPTO cited these references in support of its rejection of the '844 application confirms that the USPTO would have considered them prior art material to the patentability of the '531 application.

265.     Abhyanker nonetheless did not disclose Wilf, Blecon, Ungos, or Russell during prosecution of the '513 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

266.     Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Wilf, Blecon, Ungos, and Russell.

### **Failure to Disclose Nextdoor.com Website**

267.     Abhyanker also did not disclose the existence of Defendant's website, Nextdoor.com, and services and features provided therein, in an information disclosure statement during prosecution of the '531 application.

268.     Nextdoor.com launched to the general public in October 2011, although it had been in public beta testing since early 2011.

269.     Given that Abhyanker has accused the Nextdoor.com website of infringing the '328 patent, Abhyanker knew that the USPTO would have considered the Nextdoor.com website material to patentability.

270.     Upon information and belief, and in view of Abhyanker's knowledge that his claims of priority were improper, as well his contemporaneous knowledge of the USPTO's rejection of such a priority date in connection with the '612 application that led to the '545 patent, as explained below, Abhyanker knew that the USPTO would have considered Nextdoor.com to be prior art material to the patentability of the '531 application.

271.     Abhyanker nonetheless did not disclose the Nextdoor.com website during prosecution of the '531 application even though he knew that the USPTO would have considered it to be prior art material to patentability.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

272.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as the Nextdoor.com website.

**Conclusion**

273.    In sum, on information and belief, Abhyanker, the inventor and patent attorney for the '328 patent, misrepresented and omitted material information with the intent to deceive the USPTO to ensure the issuance of the '328 patent.

274.    By reason of this inequitable conduct, the '328 patent and all related patents are unenforceable.

275.    The '328 patent is further unenforceable as a result of Abhyanker's inequitable conduct committed during the prosecution of related applications, including without limitation U.S. Patent Application Nos. 14/151,844, addressed above, and 14/144,612, addressed above.

**SIXTEENTH DEFENSE: FAILURE TO JOIN AN INDISPENSABLE PARTY**

276.    Plaintiff has failed to join an indispensable party or parties to this action, including without limitation persons or entities who may have an ownership interest in the '328 patent, the '091 patent, and/or the '545 patent.

**COUNTERCLAIMS**

In addition to its affirmative defenses, Counterclaimant Nextdoor.com, Inc. further asserts the following counterclaims against Counterclaim Defendants Fatdoor, Inc. and Raj Abhyanker and alleges as follows:

**THE PARTIES**

1.    Counterclaimant Nextdoor.com, Inc. ("Nextdoor") is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 760 Market Street, Suite 300, San Francisco, CA 94102.

2.    On information and belief and through its own admission in its Complaint, Counterclaim Defendant Fatdoor, Inc. is a Delaware corporation with its principal place of business in Mountain View, CA.

3.    On information and belief, Counterclaim Defendant Raj Abhyanker ("Abhyanker") is an individual residing in Cupertino, CA.  On information and belief, Abhyanker

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

is the alter ego of Fatdoor. In particular, on information and belief, Abhyanker directs and controls the activities of Fatdoor without observing distinctions between his activities and those of Fatdoor and uses Fatdoor as an instrumentality of his own interests, including, without limitation, by freely transferring rights and assets as between himself and Fatdoor and other entities that he controls, such that to recognize Fatdoor as a separate entity would cause inequity and injustice. Fatdoor and its alter ego, Abhyanker, will be collectively referred to as "Fatdoor."

## THE PATENTS

4.      U.S. Patent No. 8,775,328 (the "'328 patent"), entitled "Geo-Spatially Constrained Private Social Network," issued on July 8, 2014.

5.      U.S. Patent No. 8,732,091 (the "'091 patent"), entitled "Security in a Geo-Spatial Environment," issued on May 20, 2014. Upon information and belief, Abhyanker purportedly assigned certain interests in the '091 patent to Fatdoor on June 18, 2014 and recorded an assignment to that effect with the USPTO on the same day. Abhyanker purported to own a 50% interest in the '091 patent at the time this action was filed and, to the extent that he maintained any such interests, Abhyanker continues to maintain certain interests in the '091 patent.

6.      U.S Patent No. 8,738,545 (the "'545 patent"), entitled "Map Based Neighborhood Search and Community Contribution," issued on May 27, 2014, purportedly to Abhyanker. Upon information and belief, Abhyanker purportedly assigned certain interests in the '545 patent to Fatdoor after the filing of Nextdoor's original counterclaims. Abhyanker recorded an assignment to that effect with the USPTO on June 25, 2014 that purports to have been executed on June 24, 2014. Upon information and belief, Abhyanker purported to own all interests in the '545 patent at the time of Nextdoor's counterclaims and, to the extent that he maintained any such interests, Abhyanker continues to maintain certain interests in the '545 patent.

## JURISDICTION AND VENUE

7.      Nextdoor counterclaims against Fatdoor and Abhyanker pursuant to the patent laws of the United States, Title 35 of the United States Code, laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 13.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.     This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202.

9.     This Court has personal jurisdiction over Fatdoor and Abhyanker by virtue, *inter alia*, of their filing of the Complaint in this Court and their residence in this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

11.    An actual controversy exists between Nextdoor, on the one hand, and Fatdoor and Abhyanker, on the other, with respect to the '328 patent, the '091 patent, and the '545 patent, by virtue of the allegations of Fatdoor's FAC in this action and Nextdoor's answer thereto—*i.e.*, as to whether the '328 patent, the '091 patent, and the '545 patent are invalid and/or not infringed by Nextdoor's products and services.

**FIRST COUNTERCLAIM:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '328 PATENT**

12.    Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

13.    Fatdoor claims in its FAC to be the "full owner of interest in" the '328 patent.

14.    Fatdoor asserts in this action that Nextdoor has infringed and is infringing the '328 patent.

15.    Nextdoor has not and does not infringe any valid and enforceable claim of the '328 patent, either literally or by the doctrine of equivalents.

16.    Absent a declaration of non-infringement of the '328 patent, Fatdoor will continue to assert the '328 patent against Nextdoor and will in this way cause damage to Nextdoor.

17.    Accordingly, Nextdoor is entitled to a judgment from this Court that the '328 patent is not infringed by any Nextdoor product or service, either literally or under the doctrine of equivalents.

**SECOND COUNTERCLAIM:**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '328 PATENT**

18.    Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.     Fatdoor claims in its FAC to be the "full owner of interest in" the '328 patent.

20.     Fatdoor asserts in this action that Nextdoor has infringed and is infringing the '328 patent.

21.     One or more claims of the '328 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

22.     Absent a declaration of invalidity of the '328 patent, Fatdoor will continue to assert the '091 patent against Nextdoor and will in this way cause damage to Nextdoor.

23.     Accordingly, Nextdoor seeks a declaration that one or more claims of the '328 patent are invalid.

### THIRD COUNTERCLAIM:
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '091 PATENT

24.     Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

25.     Fatdoor claims in its FAC to be the "full owner of interest in" the '091 patent. Abhyanker purports to have transferred certain ownership interests in the '091 patent to Fatdoor, Inc., but, upon information and belief, such transfer failed to transfer certain rights in the '091 patent.

26.     Fatdoor asserts in this action that Nextdoor has infringed and is infringing the '091 patent.

27.     Nextdoor has not and does not infringe any valid and enforceable claim of the '091 patent, either literally or by the doctrine of equivalents.

28.     Absent a declaration of non-infringement of the '091 patent, Counterclaim Defendants will continue to assert the '091 patent against Nextdoor and will in this way cause damage to Nextdoor.

29.     Accordingly, Nextdoor is entitled to a judgment from this Court that the '091 patent is not infringed by any Nextdoor product or service, either literally or under the doctrine of equivalents.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FOURTH COUNTERCLAIM:**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '091 PATENT**

30.     Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

31.     Fatdoor claims in its FAC to be the "full owner of interest in" the '091 patent. Abhyanker purports to have transferred certain ownership interests in the '091 patent to Fatdoor, Inc., but, upon information and belief, such transfer failed to transfer certain rights in the '091 patent.

32.     Fatdoor asserts in this action that Nextdoor has infringed and is infringing the '091 patent.

33.     One or more claims of the '091 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

34.     Absent a declaration of invalidity of the '091 patent, Counterclaim Defendants will continue to assert the '091 patent against Nextdoor and will in this way cause damage to Nextdoor.

35.     Accordingly, Nextdoor seeks a declaration that one or more claims of the '091 patent are invalid.

**FIFTH COUNTERCLAIM:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '545 PATENT**

36.     Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

37.     The '545 patent was issued by the United States Patent and Trademark office on May 27, 2014, purportedly to Abhyanker.  Upon information and belief, Abhyanker purportedly assigned certain interests in the '545 patent to Fatdoor, Inc. after the filing of Nextdoor's original counterclaims.  Abhyanker recorded an assignment to that effect with the USPTO on June 25, 2014 that purports to have been executed on June 24, 2014.  Fatdoor now claims in its FAC to be the "full owner of interest in" the '545 patent.  Upon information and belief, Abhyanker purported

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to own all interests in the '545 patent at the time of Nextdoor's original counterclaims and, to the extent that he maintained any such interests, Abhyanker continues to maintain certain interests in the '545 patent.

38.     Fatdoor asserts in this action that Nextdoor has infringed and is infringing the '545 patent.

39.     Nextdoor has not and does not infringe any valid and enforceable claim of the '545 patent, either literally or by the doctrine of equivalents.

40.     Absent a declaration of non-infringement of the '545 patent, Counterclaim Defendants will continue to pursue claims of infringement with respect to the '545 patent against Nextdoor and will in this way cause damage to Nextdoor.

41.     Accordingly, Nextdoor is entitled to a judgment from this Court that the '545 patent is not infringed by any Nextdoor product or service, either literally or under the doctrine of equivalents.

## SIXTH COUNTERCLAIM:
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '545 PATENT

42.     Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

43.     The '545 patent was issued by the United States Patent and Trademark office on May 27, 2014, purportedly to Abhyanker.  Upon information and belief, Abhyanker purportedly assigned certain interests in the '545 patent to Fatdoor, Inc. after the filing of Nextdoor's original counterclaims.  Abhyanker recorded an assignment to that effect with the USPTO on June 25, 2014 that purports to have been executed on June 24, 2014.  Fatdoor now claims in its FAC to be the "full owner of interest in" the '545 patent.  Upon information and belief, Abhyanker purported to own all interests in the '545 patent at the time of Nextdoor's original counterclaims and, to the extent that he maintained any such interests, Abhyanker continues to maintain certain interests in the '545 patent.

44.     Fatdoor asserts in this action that Nextdoor has infringed and is infringing the '545 patent.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

45.     One or more claims of the '545 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

46.     Absent a declaration of invalidity of the '545 patent, Counterclaim Defendants are likely to pursue claims of infringement with respect to the '545 patent against Nextdoor and will in this way cause damage to Nextdoor.

47.     Accordingly, Nextdoor seeks a declaration that one or more claims of the '545 patent are invalid.

### SEVENTH COUNTERCLAIM:
### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '091 PATENT

#### Introduction

48.     Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

49.     The '091 patent, and each claim thereof, is unenforceable due to inequitable conduct during its prosecution.

50.     During prosecution of the '091 patent, Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized information that he knew would have been important to a reasonable examiner in determining whether to issue the patent.

51.     Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized this material information with a specific intent to deceive the United States Patent and Trademark Office ("USPTO").

52.     Abhyanker filed U.S. Patent Application No. 14/151,844 (the "'844 application") on January 10, 2014.  The '844 application issued as the '091 patent.

53.     Abhyanker, the named inventor of the '844 application, served as patent prosecution counsel for the '844 application.

54.     Abhyanker's USPTO registration number, submitted with his filings in the '844 application, is Reg. No. 45474.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Improper Claims of Priority**

55.     Upon information and belief, Abhyanker, as a licensed patent attorney, is familiar with the rules governing the patent process.

56.     Specifically, upon information and belief, Abhyanker knew at the time he filed the '844 application that in order to claim the benefit of an earlier application's priority date, 1) the invention disclosed in the earlier application must support the claims of the later application, and 2) the two applications must have been co-pending.

57.     The USPTO issued and mailed a non-final rejection on March 17, 2014, rejecting all pending claims of the '844 application in light of Kaplan, Dan, "Fatdoor turns neighborhoods into online social networks," May 28, 2007 ("Kaplan").

58.     Kaplan described the public use and sale of Fatdoor services offered by a previous company called Fatdoor, Inc. ("Fatdoor I") which Raj Abhyanker, the CEO of the later entity, Plaintiff Fatdoor, Inc. also served as CEO.

59.     Upon information and belief, Abhyanker and therefore Plaintiff Fatdoor, Inc. knew that Fatdoor I offered services similar to those claimed in the pending claims of the '844 application.

60.     The USPTO rejected independent claim 1 of the '844 application as anticipated by Kaplan because it "discloses a neighborhood communication system: a privacy server: to verify that each user of the community network lives at a residence associated with a claimable residential address of the community network formed through a social community module of a privacy server using a processor and a memory; to obtain from each user of the community network, using the processor of a computing device, member data associated with each user, the member data including an address; to associate the address with a profile of each user; to determine a location of each user based on the member data; to store the member data in a database; and to obtain a personal address privacy preference from each user, the personal address privacy preference specifying if the address should be displayed to other users; and a mapping server associated with the privacy server through a network to generate a geospatial representation of a set of points on a map defining residences associated with each use of the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   community network having the member data."

2   61.   The USPTO rejected independent claim 13 of the '844 application as anticipated

3   by Kaplan because it "discloses [a] method of organizing a community network, comprising:

4   verifying that each user of the community network lives at a residence associated with a

5   claimable residential address of the community network formed through a social community

6   module of a privacy server using a processor and a memory; obtaining from each user of the

7   community network, using the processor of a computing device, member data associated with

8   each user, the member data including an address; associating the address with a profile of each

9   user; determining a location of each user based on the member data; storing the member data in a

10  database; and obtaining a personal address privacy preference from each user, the personal

11  address privacy preference specifying if the address should be displayed to other users."

12  62.   The USPTO rejected independent claim 25 of the '844 application as anticipated

13  by Kaplan because it "discloses a neighborhood communication system comprising: a privacy

14  server: to verify that each user of the community network lives at a residence associated with a

15  claimable residential address of the community network formed through a social community

16  module of a privacy server using a processor and a memory; to obtain from each user of the

17  community network, using the processor of a computing device, member data associated with

18  each user, the member data including an address; to associate the address with a profile of each

19  user; to determine a location of each user based on the member data; to store the member data in a

20  database; and to obtain a personal address privacy preference from each user, the personal address

21  privacy preference specifying if the address should be displayed to other users; a network; and a

22  mapping server associated with the privacy server through a network:  to generate a geospatial

23  representation of a set of points on a map defining residences associated with each use of the

24  community network having the member data, determine that a marker is colliding with another

25  marker simultaneously displayed in a map based on an overlap area of the marker with the

26  another marker, automatically create a group pointer that replaces the marker and the another

27  marker on the map, generate a view of the marker and the another marker when a user selects the

28  group pointer, and determine that the marker, the another marker, and different markers are

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

associated with a shared structure based on address data associated with occupants represented through the marker, the another marker and the different markers."

63. Abhyanker submitted a Response to Non-Final Office Action on March 26, 2014 (the "Response").

64. In the Response, Abhyanker contested the USPTO's determination that Kaplan anticipated the pending claims of the '844 application.

65. Abhyanker represented to the USPTO that Kaplan was disqualified as prior art on the ground that the '844 application was entitled to a priority date of March 17, 2006.

66. Abhyanker represented to the USPTO that the pending claims of the '844 application were entitled to claim priority to U.S. Patent Application 11/653,194 (the "'194 application"), filed on January 12, 2007, which in turned claimed priority to U.S. Patent Application No. 11/603,442 (the "'442 application"), filed on November 22, 2006.

67. The '442 application claims priority to U.S. Provisional Application 60/783,226, filed on March 17, 2006.

68. Abhyanker's claims for priority in the '844 application to the '442 and '194 applications are improper. For example, a pending claim is entitled to the benefit of the filing date of an earlier-filed application only if that earlier-filed application discloses each and every element of the pending claim.

69. As such, by representing to the USPTO that the pending claims of the '844 application were entitled to the filing dates of the '194 and '442 applications, Abhyanker in effect represented that the specifications of the '194 and '442 applications each fully disclosed the subject matter of the pending claims of the '844 application.

70. This representation by Abhyanker to the USPTO as to the '194 application was incorrect. None of the pending '844 claims was supported by the '194 application.

71. By way of example, the concept of a "privacy preference," a central feature of all claims of the '844 application, is found nowhere in the disclosures of the '194 application.

72. Similarly, Abhyanker's representation to the USPTO as to the '442 application was incorrect. None of the pending claims in the '844 application was supported by the '442

Fenwick & West LLP
Attorneys at Law
San Francisco

application

73.    By way of example, the concept of a "privacy preference," a central feature of all claims of the '844 application, is found nowhere in the disclosures of the '442 application.

74.    On information and belief, Abhyanker intentionally made these representations, knowing them to be incorrect, in order to mislead the USPTO as to the content of the '442 and '194 applications.

75.    Abhyanker is the sole inventor listed on the '442 and '194 applications, filed in 2006 and 2007 respectively.  Abhyanker thus is familiar with the subject matter disclosed in those applications.

76.    Given his status the sole inventor of the '442 and '194 applications, Abhyanker knew that those applications did not fully support the pending claims of the '844 application, including without limitation that those applications did not disclose a "privacy preference."

77.    Additionally, the '844 application fails to meet the co-pendency requirement at least with respect to the '442 application. The '442 application was abandoned on June 24, 2009. Abhyanker later filed the '844 application on January 10, 2014, identifying the '844 application as a continuation-in-part of the '442 application.

78.    Thus, the '844 application and '442 application were not co-pending.

79.    Upon information and belief, Abhyanker recognized after he filed the '844 application that co-pendency was lacking.

80.    On January 21, 2014—over four years after the '442 application was abandoned and eleven days after filing the '844 application—Abhyanker filed a request for continued examination of the '442 application in a sham effort to establish co-pendency.

81.    However, because the '442 application was abandoned at the time Abhyanker filed the '844 application, the '844 application was not co-pending with the '442 application.

82.    Upon information and belief, Abhyanker knew that the '442 application and '194 application disclosures did not support any of the pending claims of the '844 application and that co-pendency was lacking at least between the '091 patent application and the '442 application.

83.    Abhyanker's misrepresentations concerning the co-pendency of the '442

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

application and the entitlement of the '844 application to the priority dates of the '194 and '442 applications were material, as evidenced at least by the USPTO's rejection of the pending claims of the '844 application in light of Kaplan and the USPTO's withdrawal its rejection in response to Abhyanker's misrepresentations concerning the '194 and '442 applications.

84.     Absent these misrepresentations, the USPTO would not have disqualified Kaplan as prior art.

85.     Moreover, upon information and belief, Abhyanker knew that his improper claims of priority to the '442 and '194 applications were material to the patentability of the pending claims of the '844 application.

86.     Abhyanker exhibited as much during the prosecution of the '844 application.  As noted above, in his Response, Abhyanker argued that Kaplan should be disqualified because the pending claims of the '844 application were entitled to claim the benefit of the '194 and '442 applications.

87.     Upon further information and belief, Abhyanker had the specific intent of claiming priority to the '442 and '194 applications in an attempt to deceive the USPTO and avoid prior art, such as the public use of the Fatdoor services by Fatdoor I, that a reasonable examiner would rely upon to reject the pending claims of the '844 application.  Those claims, now issued as the '091 patent, would stand rejected but for Abhyanker's improper claims of priority to the '194 and '442 applications.

88.     Abhyanker's claims of priority in the '844 application misrepresented information material to patentability.

89.     Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to whether the pending claims of the '844 application were entitled to the priority date of either the '194 application or '442 application.

**Misrepresentation Regarding AIA Rules**

90.     In addition to his material misrepresentation of the '091 patent's priority date, Abhyanker omitted material information when, during the '844 application's prosecution, he did not indicate to the USPTO that the '091 patent application should be examined under the first-to-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

file provisions of the America Invents Act ("AIA") because it has at least one claim with an effective filing date after March 16, 2013.

91.     Upon information and belief, Abhyanker, a licensed patent attorney, knew that the '844 application, a continuation-in-part filed in 2014, had at least one claim with an effective date after March 16, 2013.

92.     Nevertheless, Abhyanker did not check the box provided on a USPTO form to indicate that the '844 application should be examined under AIA rules, upon information and belief, with the specific intent of deceiving the USPTO and avoiding prior art, such as the public use of Fatdoor services.

93.     Had Abhyanker properly indicated that the '844 application should be examined according to the AIA, one or more claims would have been accorded the January 10, 2014 '844 application filing date, and the USPTO would have rejected those claims in view of Kaplan.

94.     Abhyanker's contention that the '844 application should be examined according to pre-AIA rules misrepresented information material to patentability.

95.     Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to whether the pending claims of the '844 application were entitled to be examined under pre-AIA rules.

### Failure to Disclose References Relied on by the USPTO During Prosecution of Another Patent Application

96.     During prosecution of the '844 application, Abhyanker contended that the '844 application was entitled to the benefit of the '194 application's priority date.

97.     This contention was an effort to support his improper priority claims.

98.     Accordingly, and by Abhyanker's own representation, the '194 application discloses similar subject matter to that claimed by the '844 application.

99.     Abhyanker did not disclose the following references to the USPTO during the prosecution of the '844 application: Publication No. US-2001/0005829 by Raveis ("Raveis"); Publication No. US-2006/0022048 by Johnson ("Johnson"); and Publication No. US-2007/1056429 by Godar ("Godar").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

100.    The USPTO cited Raevis in support of a non-final rejection of the '194 application issued on May 10, 2011.

101.    The USPTO cited Johnson in support of a final rejection of the '194 application issued on December 10, 2012.

102.    The USPTO cited Godar in support of a non-final rejection of the '194 application issued on January 28, 2014.

103.    That the USPTO cited these references in support of its rejection of the '194 application, particularly in view of Abhyanker's argument of this application's relevance to the '844 application's claims, confirms that the USPTO would have considered them prior art material to the patentability of the '844 application.

104.    Upon information and belief, and in view of Abhyanker's knowledge that his claims of priority were improper (as well his contemporaneous knowledge of the USPTO's rejection of such a priority date in connection with the '612 application that led to the '545 patent, as explained below), Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '844 application.

105.    Abhyanker nonetheless did not disclose Raevis, Johnson, or Godar during prosecution of the '844 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

106.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Raevis, Johnson, and Godar.

### Failure to Disclose References Identified by the USPTO During Prosecution of Another Patent Application

107.    Abhyanker also did not disclose the following references to the USPTO during the prosecution of the '844 application: Publication No. US-2004/0039581 by Wheeler ("Wheeler"); Publication No. US-2006/0190279 by Heflin ("Heflin"); Publication No. US-2003/022807 by Hoffman ("Hoffman"); and Publication No. US-2005/0203768 by Florance ("Florance").

108.    In a non-final rejection of the '194 application issued on January 28, 2014, the USPTO notified Abhyanker that it considered all of these references relevant to the '194

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

application even though it had not specifically outlined their application under 35 U.S.C. §§ 102 or 103. The USPTO advised Abhyanker to review these references in particular.

109. That the USPTO identified these references as relevant in support of its rejection of the '194 application, particularly in view of Abhyanker's arguments that the '194 application fully discloses the invention(s) claimed in the '844 application, confirms that the USPTO would have considered it to be prior art material to the patentability of the '844 application.

110. Upon information and belief, and in view of Abhyanker's knowledge that his claims of priority were improper (as well his contemporaneous knowledge of the USPTO's rejection of such a priority date in connection with the '612 application that led to the '545 patent, as explained below), Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '844 application.

111. Abhyanker nonetheless did not disclose Wheeler, Heflin, Hoffman, or Florance during prosecution of the '844 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

112. Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Wheeler, Heflin, Hoffman, and Florance.

### Failure to Disclose Nextdoor.com Website

113. Abhyanker also did not disclose the existence of Defendant's website, Nextdoor.com, and services and features provided therein, in an information disclosure statement during prosecution of the '844 application.

114. Nextdoor.com launched to the general public in October 2011, although it had been in public beta testing since early 2011.

115. Given that Abhyanker has, on the day of issuance, accused the Nextdoor.com website of infringing the '091 patent, Abhyanker knew that the USPTO would have considered the Nextdoor.com website material to patentability.

116. Upon information and belief, and in view of Abhyanker's knowledge that his claims of priority were improper, as well his contemporaneous knowledge of the USPTO's rejection of such a priority date in connection with the '612 application that led to the '545 patent,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

as explained below, Abhyanker knew that the USPTO would have considered Nextdoor.com to be prior art material to the patentability of the '844 application.

117.    Abhyanker nonetheless did not disclose the Nextdoor.com website during prosecution of the '844 application even though he knew that the USPTO would have considered it to be prior art material to patentability.

118.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as the Nextdoor.com website.

### Conclusion

119.    In sum, on information and belief, Abhyanker, the inventor and patent attorney for the '091 patent, misrepresented and omitted material information with the intent to deceive the USPTO to ensure the issuance of the '091 patent.

120.    By reason of this inequitable conduct, the '091 patent and all related patents are unenforceable.

121.    Absent a declaration of unenforceability of the '091 patent, Counterclaim Defendants are likely to continue to pursue claims of infringement with respect to the '091 patent against Nextdoor and will in this way cause damage to Nextdoor.

122.    The '091 patent is further unenforceable as a result of Abhyanker's inequitable conduct committed during the prosecution of related patent applications, including without limitation U.S. Patent Application No. 14/203,531, addressed below, and U.S. Patent Application No. 14/144,612, addressed below.

123.    Accordingly, Nextdoor seeks a declaration that the '091 patent is unenforceable.

### EIGHTH COUNTERCLAIM:
### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '545 PATENT

### Introduction

124.    Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

125.    The '545 patent, and each claim thereof, is unenforceable due to inequitable conduct during its prosecution.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

126. During prosecution of the '545 patent, Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized information that he knew would have been important to a reasonable examiner in determining whether to issue the patent.

127. Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized this material information with a specific intent to deceive the United States Patent and Trademark Office ("USPTO").

128. Abhyanker filed U.S. Patent Application No. 14/144,612 (the "'612 application") on December 31, 2013. The '612 application issued as the '545 patent.

129. Abhyanker, the named inventor of the '612 application, served as patent prosecution counsel for the '612 application.

130. Abhyanker's USPTO registration number, submitted with his filings in the '612 application, is Reg. No. 45474.

**Improper Claims of Priority**

131. Upon information and belief, Abhyanker, as a licensed patent attorney, is familiar with the rules governing the patent process.

132. Specifically, upon information and belief, Abhyanker knew at the time he filed the '612 application that in order to claim the benefit of an earlier application's priority date, 1) the invention disclosed in the earlier application must support the claims of the later application, and 2) the two applications must have been co-pending.

133. The USPTO issued and mailed a non-final rejection on March 6, 2014, rejecting all pending claims of the '612 application.

134. The USPTO's rejection stood in part on the ground that Abhyanker's priority claims were improper and that, instead, the claims of the '612 application were entitled to an effective filing date of December 31, 2013.

135. The USPTO further based its rejection under 35 U.S.C. 103(a), finding that the claims of the '612 application were unpatentable over Abhyanker's own '442 application and U.S. Patent Application No. 11/717,807 (the "'087 application), filed in 2006 and 2007, respectively.

Fenwick & West LLP
Attorneys at Law
San Francisco

136.    Abhyanker submitted a response to the non-final office action on March 10, 2014 (the "'612 Response").

137.    In the '612 Response, Abhyanker contested the USPTO's determination that the claims of the '612 application were entitled to an effective filing date of December 31, 2013.

138.    Abhyanker represented to the USPTO that the pending claims of the '612 application were entitled to claim priority to the '194 application, filed on January 12, 2007, which in turned claimed priority to the '442, filed on November 22, 2006.

139.    The '442 application claims priority to U.S. Provisional Application 60/783,226, filed on March 17, 2006.

140.    Abhyanker's claims for priority in the '844 application to the '442 and '194 applications are improper.  For example, a pending claim is entitled to the benefit of the filing date of an earlier-filed application only if that earlier-filed application discloses each and every element of the pending claim.

141.    In the Response, Abhyanker specifically represented that the pending claims of the '612 application were "<u>entirely</u> supported" in the specification of the '194 application, as well as by the specifications of two other patent applications, Nos. 11/731,465 (the "'465 application") and 11/827,400 (the "'400 application").

142.    This representation by Abhyanker to the USPTO as to the '194, '465, and '400 applications was incorrect.  None of the pending claims of the '612 application was supported by these applications.

143.    By way of example, the concept of conducting "high value crime and safety related discussions," which is central to all claims of the '612 application, is found nowhere in the disclosures of the '194, '465, or '400 applications.

144.    On information and belief, Abhyanker, a licensed patent attorney, intentionally made these representations, knowing them to be incorrect, in order to mislead the USPTO as to the content of the '194, '465, and '400 applications.

145.    Abhyanker is the sole inventor listed on the '194, '465, and '400 applications, all filed in 2007.  Abhyanker thus is familiar with the subject matter disclosed in those applications.

146.    Given his status as the sole inventor of the '194, '465, and '400 applications, Abhyanker knew that those applications did not fully support the pending claims of the '612 application, including without limitation that those applications did not disclose the concept of conducting "high value crime and safety related discussions."

147.    Additionally, the '612 application fails to meet the co-pendency requirement at least with respect to the '442 application.  The '442 application was abandoned on June 24, 2009. Abhyanker later filed the '612 application on December 31, 2013.

148.    Thus, the '612 application and '442 application were not co-pending.

149.    Upon information and belief, Abhyanker recognized after he filed the '612 application that co-pendency was lacking.

150.    On January 21, 2014—over four years after the '442 application was abandoned and twenty-one days after filing the '612 application—Abhyanker filed a request for continued examination of the '442 application in a sham effort to establish co-pendency.

151.    However, because the '442 application was abandoned at the time Abhyanker filed the '612 application, the '612 application was not co-pending with the '442 application.

152.    Upon information and belief, Abhyanker knew that the '442 application and '194 application disclosures did not support any of the pending claims of the '612 application and that co-pendency was lacking at least between the '612 patent application and the '442 application.

153.    Abhyanker nonetheless represented in the Response of March 10, 2014 that the '612 application was entitled to the benefit of the '442 application's priority date.

**Failure to Disclose Kaplan Reference Relied on by the USPTO or Other Fatdoor References During the Prosecution of Another Application**

154.    Abhyanker also did not disclose the following reference to the USPTO during the prosecution of the '612 application: Kaplan, Dan, "Fatdoor turns neighborhoods into online social networks," May 28, 2007 ("Kaplan").

155.    Kaplan describes the public use and sale of Fatdoor services offered by a previous company called Fatdoor, Inc. ("Fatdoor I") of which Raj Abhyanker, the CEO of the later entity, Plaintiff Fatdoor, Inc. also served as CEO.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

156.     More generally, Abhyanker failed to disclose any references describing services offered by Fatdoor I, including the fatdoor.com website.

157.     Upon information and belief, Abhyanker knew that Fatdoor I offered services similar to those claimed in the pending claims of the '612 application.

158.     Abhyanker became aware of Kaplan in particular no later than March 17, 2014, at which time Kaplan was cited by the USPTO during prosecution of the '844 application in connection with a non-final rejection.

159.     Abhyanker did not disclose the office action wherein the examiner cited Kaplan.

160.     Abhyanker was personally involved in the development of Fatdoor I and was aware of services made publicly available at fatdoor.com.

161.     The '091 and '545 patents disclose and claim similar subject matter, and the '091 patent claims to be a continuation-in-part of the '612 application.

162.     Accordingly, material prior art to the '844 application would also have been material prior art to the '612 application.

163.     Upon information and belief, Abhyanker knew that the USPTO would have found Kaplan to be material to patentability because the USPTO had previously relied on Kaplan in issuing a rejection of the '844 application.

164.     During the prosecution of the '844 application, Abhyanker argued that Kaplan was not prior art to the '844 application because the '844 application was entitled to a priority date prior to Kaplan's publication date of May 28, 2007, in particular, that of the '442 application, filed November 22, 2006.

165.     During the prosecution of the '612 application, Abhyanker argued that the '612 patent was also entitled to the '442 application's priority date.

166.     The USPTO rejected Abhyanker's claim of priority for the '612 application, instead according its claims an effective filing date of December 31, 2013.  The USPTO accordingly examined the '612 application under AIA rules.

167.     Upon information and belief, Abhyanker knew that the USPTO would have considered Kaplan to be prior art to the '612 application.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

168. Abhyanker nonetheless did not disclose Kaplan during prosecution of the '612 application even though he knew that the USPTO would have considered Kaplan to be prior art material to patentability.

169. Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Kaplan.

170. Upon information and belief, because Kaplan describes the operation of services then available at fatdoor.com, Abhyanker knew that the USPTO would have considered fatdoor.com, or any reference describing it, to be prior art to the '612 application.

171. Abhyanker nonetheless did not disclose fatdoor.com, or any reference describing it, during prosecution of the '612 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

172. Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as fatdoor.com or any reference describing it.

### Failure to Disclose Other References Relied on by the USPTO During the Prosecution of the '844 Application

173. The USPTO cited several other references in support of the non-final rejection of the '844 application on March 17, 2014. These include U.S. Patent No. 8,650,103, by Wilf et al. ("Wilf"); Publication No. US-2013/0282842, by Blecon et al. ("Blecon"); Publication No. US-2011/0231268, by Ungos ("Ungos"); and an article from Wired.com entitled "Fatdoor CEO Talks about balancing security with community," by Russell ("Russell").

174. That the USPTO cited these references in support of its rejection of the '844 application confirms that the USPTO would have considered them prior art material to the patentability of the '612 application.

175. Upon information and belief, and in view of the USPTO's conclusion that the '612 application's claims were entitled to an effective filing date of December 31, 2013, Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '612 application.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

176.    Abhyanker nonetheless did not disclose Wilf, Blecon, Ungos, or Russell during prosecution of the '612 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

177.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Wilf, Blecon, Ungos, and Russell.

### Failure to Disclose References Relied on by the USPTO During the Prosecution of the '194 and '400 Applications

178.    In addition, during prosecution of the '612 application, Abhyanker argued, in a March 10, 2014 response to a March 6, 2014 non-final rejection, that the independent claims of the '612 application "are <u>entirely</u> supported" in the specifications of the '194, '465, and '400 applications.

179.    Accordingly, and by Abhyanker's own representation, the '194, '465, and '400 applications disclose similar subject matter to that claimed by the '612 application.

180.    Abhyanker did not disclose the following references to the USPTO during the prosecution of the '612 application: Publication No. US-2001/0005829 by Raveis ("Raveis"); Publication No. US-2006/0022048 by Johnson ("Johnson"); Publication No. US-2007/1056429 by Godar ("Godar"); Publication No. 2008/0125969 by Chen ("Chen"); and Publication No. 2007/0203644 by Thota ("Thota").

181.    The USPTO cited Raevis in support of a non-final rejection of the '194 application issued on May 10, 2011.

182.    The USPTO cited Johnson in support of a final rejection of the '194 application issued on December 10, 2012.

183.    The USPTO cited Godar in support of a non-final rejection of the '194 application issued on January 28, 2014.

184.    The USPTO cited Chen and Thota in support of a non-final rejection of the '400 application issued on April 12, 2011.

185.    That the USPTO cited these references in support of its rejection of the '194 and '400 applications, particularly in view of Abhyanker's argument of these applications' relevance

to the '612 application's claims, confirms that the USPTO would have considered them prior art material to the patentability of the '612 application.

186.    Upon information and belief, and in view of the USPTO's conclusion that the '612 application's claims were entitled to an effective filing date of December 31, 2013, Abhyanker knew that the USPTO would have considered these references to be prior art material to the patentability of the '612 application.

187.    Abhyanker nonetheless did not disclose Raevis, Johnson, Godar, Chen, and Thota during prosecution of the '612 application even though he knew that the USPTO would have considered them to be prior art material to patentability.

188.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to the existence of material prior art such as Raevis, Johnson, Godar, Chen, and Thota.

### Failure to Disclose References Identified by the USPTO During the Prosecution of the '194 Application

189.    Abhyanker also did not disclose the following references to the USPTO during the prosecution of the '612 application: Publication No. US-2004/039581 by Wheeler ("Wheeler"); Publication No. US-2006/0190279 by Heflin ("Heflin"); Publication No. US-2003/022807 by Hoffman ("Hoffman"); and Publication No. US-2005/0203768 by Florance ("Florance").

190.    In a non-final rejection of the '194 application issued on January 28, 2014, the USPTO notified Abhyanker that it considered all of these references relevant to the '194 application even though it had not specifically outlined their application under 35 U.S.C. §§ 102 or 103.  The USPTO advised Abhyanker to review these references in particular.

191.    That the USPTO identified these references as relevant in support of its rejection of the '194 application, particularly in view of Abhyanker's argument of this application's relevance to the '612 application's claims, confirms that the USPTO would have considered it to be prior art material to the patentability of the '612 application.

192.    Upon information and belief, and in view of the USPTO's conclusion that the '612 application's claims were entitled to an effective filing date of December 31, 2013, Abhyanker knew that the USPTO would have considered these references to be prior art material to the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   patentability of the '612 application.

2       193.    Abhyanker nonetheless did not disclose Wheeler, Heflin, Hoffman, and Florance

3   during prosecution of the '612 application even though he knew that the USPTO would have

4   considered them to be prior art material to patentability.

5       194.    Upon information and belief, Abhyanker specifically intended to deceive the

6   USPTO as to the existence of material prior art such as Wheeler, Heflin, Hoffman, and Florance.

7                    **Failure to Disclose the Nextdoor.com Website**

8       195.    Abhyanker also did not disclose the existence of Defendant's website,

9   Nextdoor.com, and services and features provided therein, in an information disclosure statement

10  during prosecution of the '612 application.

11      196.    Nextdoor.com launched to the general public in October 2011, although it had

12  been in public beta testing since early 2011.

13      197.    Given that Abhyanker has accused the Nextdoor.com website of infringing the

14  '545 patent, Abhyanker knew that the USPTO would have considered the Nextdoor.com website

15  material to patentability.

16      198.    Given that the USPTO accorded the '612 application's claims an effective filing

17  date of December 31, 2013, Abhyanker knew that the USPTO would have considered

18  Nextdoor.com to be prior art to the '612 application.

19      199.    Abhyanker nonetheless did not disclose the Nextdoor.com website during

20  prosecution of the '612 application even though he knew that the USPTO would have considered

21  it to be prior art material to patentability.

22      200.    Upon information and belief, Abhyanker specifically intended to deceive the

23  USPTO as to the existence of material prior art such as the Nextdoor.com website.

24                                **Conclusion**

25      201.    In sum, on information and belief, Raj Abhyanker, the inventor and patent attorney

26  for the '545 patent, misrepresented and omitted material information with the intent to deceive the

27  USPTO to ensure the issuance of the '545 patent.

28      202.    By reason of this inequitable conduct, the '545 patent and all related patents are

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

unenforceable.

203.    Absent a declaration of unenforceability of the '545 patent, Counterclaim Defendants are likely to continue to pursue claims of infringement with respect to the '545 patent against Nextdoor and will in this way cause damage to Nextdoor.

204.    The '545 patent is further unenforceable as a result of Abhyanker's inequitable conduct committed during the prosecution of related patent applications, including without limitation U.S. Patent Application Nos. 14/203,531, addressed below, and 14/151,844, addressed above.

205.    Accordingly, Nextdoor seeks a declaration that the '545 patent is unenforceable.

### NINTH COUNTERCLAIM:
### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '328 PATENT
#### Introduction

206.    Nextdoor incorporates paragraphs 1 through 11 of the Counterclaims by reference as if fully restated herein.

207.    The '328 patent, and each claim thereof, is unenforceable due to inequitable conduct during its prosecution.

208.    During prosecution of the '328 patent, Raj Abhyanker ("Abhyanker") failed to disclose, withheld, concealed, and/or mischaracterized information that he knew would have been important to a reasonable examiner in determining whether to issue the patent.

209.    Abhyanker failed to disclose, withheld, concealed, and/or mischaracterized this material information with a specific intent to deceive the United States Patent and Trademark Office ("USPTO").

210.    Abhyanker filed U.S. Patent Application No. 14/203,531 (the "'531 application") on March 10, 2014.  The '531 application issued as the '328 patent.

211.    Abhyanker, the named inventor of the '531 application, served as patent prosecution counsel for the '531 application.

212.    Abhyanker's USPTO registration number, submitted with his filings in the '531 application, is Reg. No. 45474.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Improper Claims of Priority**

213.    Upon information and belief, Abhyanker, as a licensed patent attorney, is familiar with the rules governing the patent process.

214.    Specifically, upon information and belief, Abhyanker knew at the time he filed the '531 application that in order to claim the benefit of an earlier application's priority date, 1) the invention disclosed in the earlier application must support the claims of the later application, and 2) the two applications must have been co-pending.

215.    Abhyanker represented to the USPTO that the pending claims of the '531 application were entitled to claim priority to U.S. Patent Application 11/653,194 (the "'194 application"), filed on January 12, 2007, which in turned claimed priority to U.S. Patent Application No. 11/603,442 (the "'442 application"), filed on November 22, 2006.

216.    Abhyanker further represented that the '442 and '194 applications disclosed each and every element of the pending claims of the '531 application by submitting a claim chart to that effect to the USPTO.

217.    Additionally, the '531 application fails to meet the co-pendency requirement at least with respect to the '442 application because the '442 application was abandoned at the time Abhyanker field the '531 application.

218.    Upon information and belief, Abhyanker recognized that the '531 and '442 applications were not co-pending.

219.    For this reason, Abhyanker sought to claim the benefit of the '442 application's priority date by claiming priority to the '194 application.

220.    However, the '194 application's disclosure did not support the pending claims of the '531 application.

221.    Upon information and belief, Abhyanker recognized that the '194 application's disclosure did not support the pending claims of the '531 application.

222.    Therefore, in a preliminary amendment dated May 12, 2014, Abhyanker inserted matter into the specification of the '531 application that is not found in the '194 application's disclosure.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

223.    In the May 12, 2014 preliminary amendment, Abhyanker asserted that no new matter had been added, but instead that such matter was incorporated from the '442 application.

224.    This statement in the May 12, 2014 preliminary amendment is untrue.  The '531 application adds new matter to the '194 application's disclosure.

225.    Abhyanker's misrepresentations concerning the entitlement of the '531 application to the priority dates of the '194 and '442 applications were material to patentability because the examiner would have accorded the '531 application an effective filing date of no earlier than March 10, 2014 absent these misrepresentations.

226.    The examiner would have then considered numerous other references to be prior art to the '531 application, including, without limitation, references describing the public use and sale of Fatdoor services offered by a previous company called Fatdoor, Inc. ("Fatdoor I") of which Raj Abhyanker, the CEO of the later entity, Plaintiff Fatdoor, Inc., also served as CEO. One such reference is Kaplan, Dan, "Fatdoor turns neighborhoods into online social networks," May 28, 2007 ("Kaplan"), which was cited in a non-final rejection of the '844 application (which issued as the '091 patent) on March 17, 2014.

227.    That the USPTO cited Kaplan in a rejection of the '091 patent, which discloses and claims similar subject matter as the '531 application and which claims priority to the same '194 application, confirms that the USPTO would have considered Kaplan to be a material prior art reference if it considered Kaplan to be prior art.

228.    Thus, Abhyanker's claims of priority in the '531 application misrepresented information material to patentability.

229.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to whether the pending claims of the '531 application were entitled to the priority date of the '194 application and the '442 application by extension.

**Misrepresentation Regarding AIA Rules**

230.    In addition to his material misrepresentation of the '328 patent's priority date, Abhyanker omitted material information when, during the '531 application's prosecution, he did not indicate to the USPTO that the '328 patent application should be examined under the first-to-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

file provisions of the America Invents Act ("AIA") because it has at least one claim with an effective filing date after March 16, 2013.

231.    Upon information and belief, Abhyanker, a licensed patent attorney, knew that the '531 application, purportedly a continuation but in fact a continuation-in-part filed in 2014 and containing new matter, had at least one claim with an effective date after March 16, 2013.

232.    Nevertheless, Abhyanker did not check the box provided on a USPTO form to indicate that the '531 application should be examined under AIA rules, upon information and belief, with the specific intent of deceiving the USPTO and avoiding prior art, such as the public use of Fatdoor services.

233.    Had Abhyanker properly indicated that the '531 application should be examined according to the AIA, one or more claims would have been accorded the March 10, 2014 '531 application filing date, and the USPTO would have rejected those claims in view of Kaplan.

234.    Abhyanker's contention that the '531 application should be examined according to pre-AIA rules misrepresented information material to patentability.

235.    Upon information and belief, Abhyanker specifically intended to deceive the USPTO as to whether the pending claims of the '531 application were entitled to be examined under pre-AIA rules.

## Failure to Disclose References Relied on by USPTO During the Prosecution of the '844 Application

236.    The '091 patent that issued on the '844 application discloses and claims similar subject matter as the '328 application.  The '091 patent claims to be a continuation-in-part of the '194 application, and the '328 claims to be a continuation of the '194 application.

237.    Accordingly, material prior art to the '844 application would also have been material prior art to the '531 application.

238.    The USPTO cited several references in support of the non-final rejection of the '844 application on March 17, 2014.  These include U.S. Patent No. 8,650,103, by Wilf et al. ("Wilf"); Publication No. US-2013/0282842, by Blecon et al. ("Blecon"); Publication No. US-2011/0231268, by Ungos ("Ungos"); and an article from Wired.com entitled "Fatdoor CEO Talks

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   about balancing security with community," by Russell ("Russell").

2       239.    That the USPTO cited these references in support of its rejection of the '844

3   application confirms that the USPTO would have considered them prior art material to the

4   patentability of the '531 application.

5       240.    Abhyanker nonetheless did not disclose Wilf, Blecon, Ungos, or Russell during

6   prosecution of the '513 application even though he knew that the USPTO would have considered

7   them to be prior art material to patentability.

8       241.    Upon information and belief, Abhyanker specifically intended to deceive the

9   USPTO as to the existence of material prior art such as Wilf, Blecon, Ungos, and Russell.

10                      **Failure to Disclose Nextdoor.com Website**

11      242.    Abhyanker also did not disclose the existence of Defendant's website,

12  Nextdoor.com, and services and features provided therein, in an information disclosure statement

13  during prosecution of the '531 application.

14      243.    Nextdoor.com launched to the general public in October 2011, although it had

15  been in public beta testing since early 2011.

16      244.    Given that Abhyanker has accused the Nextdoor.com website of infringing the

17  '328 patent, Abhyanker knew that the USPTO would have considered the Nextdoor.com website

18  material to patentability.

19      245.    Upon information and belief, and in view of Abhyanker's knowledge that his

20  claims of priority were improper, as well his contemporaneous knowledge of the USPTO's

21  rejection of such a priority date in connection with the '612 application that led to the '545 patent,

22  as explained below, Abhyanker knew that the USPTO would have considered Nextdoor.com to

23  be prior art material to the patentability of the '531 application.

24      246.    Abhyanker nonetheless did not disclose the Nextdoor.com website during

25  prosecution of the '531 application even though he knew that the USPTO would have considered

26  it to be prior art material to patentability.

27      247.    Upon information and belief, Abhyanker specifically intended to deceive the

28  USPTO as to the existence of material prior art such as the Nextdoor.com website.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## **Conclusion**

248.    In sum, on information and belief, Abhyanker, the inventor and patent attorney for the '328 patent, misrepresented and omitted material information with the intent to deceive the USPTO to ensure the issuance of the '328 patent.

249.    By reason of this inequitable conduct, the '328 patent and all related patents are unenforceable.

250.    Absent a declaration of unenforceability of the '328 patent, Fatdoor is likely to continue to pursue claims of infringement with respect to the '328 patent against Nextdoor and will in this way cause damage to Nextdoor.

251.    The '328 patent is further unenforceable as a result of Abhyanker's inequitable conduct committed during the prosecution of related applications, including without limitation U.S. Patent Application Nos. 14/151,844 and 14/144,612, addressed above.

252.    Accordingly, Nextdoor seeks a declaration that the '328 patent is unenforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, Nextdoor requests relief against Fatdoor and Abhyanker as follows:

a.    For a judgment in favor of Nextdoor denying Abhyanker and Fatdoor all relief requested in the Complaint and dismissing their Complaint with prejudice;

b.    For a judgment against Abhyanker and Fatdoor declaring that Nextdoor has not and does not infringe any valid and enforceable claim of the '328 patent;

c.    For a judgment against Abhyanker and Fatdoor declaring that one or more claims of the '328 patent are invalid and unenforceable;

d.    For a judgment against Abhyanker and Fatdoor declaring that Nextdoor has not and does not infringe any valid and enforceable claim of the '091 patent;

e.    For a judgment against Abhyanker and Fatdoor declaring that one or more claims of the '091 patent are invalid and unenforceable;

f.    For a judgment against Abhyanker and Fatdoor declaring that Nextdoor has not and does not infringe any valid and enforceable claim of the '545 patent;

g.    For a judgment against Abhyanker and Fatdoor declaring that one or more claims

of the '545 patent are invalid and unenforceable;

  h.  For a judgment against Abhyanker and Fatdoor declaring that the '328 patent is unenforceable due to inequitable conduct;

  i.  For a judgment against Abhyanker and Fatdoor declaring that the '091 patent is unenforceable due to inequitable conduct;

  j.  For a judgment against Abhyanker and Fatdoor declaring that the '545 patent is unenforceable due to inequitable conduct;

  k.  For a judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Nextdoor its reasonable attorneys' fees;

  l.  For an award of costs to Nextdoor; and

  m.  Such other relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Nextdoor hereby requests a trial by jury on all issues so triable.

Dated:  August 1, 2014     FENWICK & WEST LLP

            By:  */s/ Michael J. Sacksteder*
              Michael J. Sacksteder

            Attorneys for Defendant
            NEXTDOOR.COM, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO